2020 IL 125165

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125165)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
KEITH GAINES, Appellee.

*Opinion filed September 24, 2020.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Karmeier, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 Following the trial court's *sua sponte* vacatur of defendant's negotiated guilty plea in response to several comments made by defendant, defendant was convicted of felony criminal trespass to a residence (720 ILCS 5/19-4(a)(2) (West 2014)) and domestic battery (*id.* § 12-3.2(a)(2)) at a bench trial. The appellate court reversed. Relevant here, the appellate court determined that jeopardy had attached when the

circuit court of Will County accepted defendant's guilty plea and that the trial court abused its discretion in vacating the guilty plea *sua sponte*. Thus, the appellate court held that defendant's subsequent bench trial violated the double jeopardy clauses of the United States Constitution (U.S. Const., amend. V), the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 10), and section 3-4(a)(3) of the Criminal Code of 2012 (Code) (720 ILCS 5/3-4(a)(3) (West 2014)). Despite defendant's forfeiture of the double jeopardy challenge, the appellate court held that the error was plain and amounted to structural error. We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 2                                    BACKGROUND

¶ 3        After a dispute at his parents' house, defendant was charged with criminal damage to property (count I) (720 ILCS 5/21-1(a) (West 2014)), criminal trespass to a residence (count II) (*id.* § 19-4(a)(2)), misdemeanor criminal damage to property (count III) (*id.* § 21-1(a)(1)), misdemeanor domestic battery (count IV) (*id.* § 12-3.2(a)(2)), and misdemeanor aggravated assault (count V) (*id.* § 12-2(c)(1)).

¶ 4        The transcript from defendant's plea hearing reveals the following:

        "MS. RABENDA [(ASSISTANT STATE'S ATTORNEY)]: Your Honor, as to Mr. Gaines, the State would be recommending if the defendant were to plead to an amended Domestic Battery, Class A Misdemeanor on Count IV and Criminal Damage to Property on Count III.

        THE COURT: Are those all Class A misdemeanors?

        MS. RABENDA: Yes. 24 months of reporting probation, 158 days, day for day credit for time served, time considered served.

        THE COURT: How many days was that, please?

        MS. RABENDA: 158. I would make a motion to *nolle prosequi* all remaining counts and the defendant would attend an anger management program or provide proof of completion thereof.

THE COURT: Okay. If Mr. Dawson and Ms. Crawford, if you would just stand by for a minute.

Mr. Gaines, do you see that document? Is that your signature?

DEFENDANT GAINES: Yes, Sir.

THE COURT: Do you understand that by pleading guilty there isn't going to be a trial of any kind in this case. These are all Class A Misdemeanors, the maximum punishment is a fine of up to $2,500 and/or up to 364 days in the Will County Jail.

By pleading guilty you are giving away your right to remain silent by admitting to me that you committed these crimes. You are also giving away your right to a jury trial where 12 people would be selected randomly from the community to determine your guilt or innocence. Once you do that, that right is gone, it's gone forever and you can't get it back.

You heard the Assistant State's Attorney tell me there was a plea agreement in your case. Is what she told me your understanding of the agreement?

DEFENDANT GAINES: Yes, Sir.

THE COURT: You understand I don't have to go along with that, that I can sentence you to anything that the law would allow once you plead guilty?

DEFENDANT GAINES: Yes, sir.

THE COURT: Brief statement of facts, Ms. Rabenda?

MS. RABENDA: Your Honor, one other admonishment. I believe that the defendant is on parole for residential burglary.

THE COURT: But you're reducing this to a misdemeanor, right?

MS. RABENDA: Correct.

THE COURT: Okay.

MS. RABENDA: Statement of facts. If called to testify, witnesses for the State would testify that officers met with Latoya [*sic*] Gaines who indicated that she had come home and discovered her son, being the defendant, in the house and that he was not welcome there. She ordered him to leave. He did not do so. She went upstairs and when she came back down he was still there. She asked him what he was doing. He grabbed her about the neck. She had difficulty breathing. She tried to call for her husband but the defendant grabbed and broke her phone.

The defendant ran outside and began throwing landscaping bricks at the house windows and screen door. The defendant's father came home and told the defendant to stop. The defendant threw bricks at him but missed. Damage was done to Lee Gaines' Chevrolet Silverado. Windows were broken on the house, the door and there were scratches on LaToya's [*sic*] neck.

THE COURT: And you're reducing these to misdemeanors?

MS. RABENDA: Yes, Your Honor. I have had a number of conversations with the named victims in this matter and that was part of their request.

THE COURT: Is that what happened, Mr. Gaines?

DEFENDANT GAINES: Not—no, but I don't want to be in here fighting it. I'd rather—

THE COURT: Okay. Well, let me ask you this. If you don't agree that that's what happened, do you think that's what the witnesses would say if they were here?

DEFENDANT GAINES: Yeah.

THE COURT: Show the Court finds that defendant's plea of guilty and his waiver of his right to remain silent and his waiver of his right to a jury trial to be knowing and intelligently entered into and executed in writing, accepted by the Court.

Prior criminal history?

MS. RABENDA: Your Honor, the defendant has a residential burglary from 2012 that he was given four years in [the Department of Corrections]. He's on parole. I believe he has less than a week left on that parole. He has a DUI from 2013 that he received conditional discharge and a theft adjudication of a delinquent minor from 2011. It was a misdemeanor.

THE COURT: Is that accurate, Mr. Phillips?

MR. PHILLIPS [(DEFENSE ATTORNEY)]: Yes, Judge.

THE COURT: Sir, you have the right to make a statement. Anything you say, I'll take it into account. If on the other hand you don't want to say anything, you don't have to. If you don't say anything I won't hold it against you. Is there anything you want to say?

DEFENDANT GAINES: I know this looks bad—

THE COURT: I'm sorry, what did you say?

DEFENDANT GAINES: I want to say I know it sounds bad in the statement that was given, but if it was to go to trial no one would be coming to court. Or if they did they would say that—

THE COURT: Okay. The plea is rejected. The felonies are reinstated. What day do you want to set this for trial? I won't participate in any 402 conferences in this case."

¶ 5    Defendant did not object.

¶ 6    At the conclusion of defendant's bench trial, defendant was found guilty of felony criminal trespass to a residence (count II) and misdemeanor domestic battery (count IV). The trial court merged the convictions, entered judgment on the criminal trespass count, and imposed a sentence of five years' imprisonment. Defendant did not raise a double jeopardy argument in his posttrial motion.

¶ 7    On appeal, defendant argued that the State failed to prove him guilty beyond a reasonable doubt of criminal trespass to a residence and, for the first time, that the trial court's *sua sponte* vacatur of his guilty plea and subsequent trial on all five

counts violated the double jeopardy clauses of the United States Constitution and the Illinois Constitution (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10).

¶ 8        The appellate court determined that the State failed to prove defendant guilty beyond a reasonable doubt of criminal trespass to a residence and vacated the conviction. 2019 IL App (3d) 160494, ¶ 22. The appellate court also concluded that, because defendant never pled guilty to counts I, II, and V, jeopardy did not attach to those nol-prossed charges and no double jeopardy violation occurred. *Id.* ¶ 25.

¶ 9        A majority of the appellate court did, however, opt to review whether jeopardy attached to defendant's guilty plea for second-prong plain error. *Id.* ¶ 27. First, the appellate majority concluded that jeopardy had attached because the trial court had unequivocally accepted defendant's guilty plea. *Id* ¶ 30.

¶ 10       Next, the appellate majority considered whether the trial court had improperly terminated the guilty plea proceedings and thus subjected defendant to reprosecution in violation of the double jeopardy clause. *Id.* ¶ 31. The appellate majority turned to *People v. Cabrera*, wherein the appellate court explained that, " 'just as a jury or bench trial may terminate properly, allowing for retrial when, for example, "manifest necessity" compels such an outcome [citation], by implication, if the original guilty plea hearing is terminated properly under Illinois law, a successive prosecution is not barred under section 3-4(a)(3).' " *Id.* ¶ 32 (quoting *People v. Cabrera*, 402 Ill. App. 3d 440, 449 (2010)). The appellate majority then considered when a trial court may *sua sponte* withdraw its acceptance of a defendant's guilty plea and properly terminate the guilty plea proceeding. *Id.* ¶ 33. The appellate majority looked to the following passage from this court's decision in *People v. Hancasky* for guidance:

" '[W]e believe it follows that a court may set aside or withdraw a plea of guilty, on its own motion and without the consent of a defendant, in cases where the evidence shows that the defendant is insane, or under some similar disability, or *where the court has good reason to doubt the truth of the plea*, or where it is affirmatively shown that the plea of guilty was induced by some promise on the part of the State's Attorney or others in authority, or where it is obvious that a defendant has been misinformed as to his rights.' " (Emphasis in original.) *Id.* (quoting *People v. Hancasky*, 410 Ill. 148, 154-55 (1951)).

¶ 11    Observing that *Cabrera* cited *Hancasky* for the proposition that a trial court may withdraw a guilty plea when it has good reason to doubt the truth of the plea, the appellate majority concluded that the *Cabrera* court had equated this rule with a claim of innocence by the defendant. *Id.* ¶ 34 (noting the *Cabrera* court's statement that " '[u]nder well-established Illinois case law, a circuit court has discretion to accept or reject a guilty plea where the defendant proclaims his innocence' " (quoting *Cabrera*, 402 Ill. App. 3d at 451)). The appellate majority cited several reasons (*id.* ¶¶ 35-44) in support of its conclusion that, unlike in *Cabrera* where defendant made a claim of innocence, there was "no evidence to show that the guilty plea proceeding terminated properly, *** [and thus] the trial court improperly terminated [defendant's] plea hearing under section 3-4(a)(3) of the Code and, therefore, the subsequent trial constituted double jeopardy" (*id.* ¶ 45). The appellate majority explained:

> "In circumstances where, as here, defendant has entered into a fully negotiated plea agreement admitting to the commission to two crimes and has orally admitted to the commission of those crimes in open court and where that agreement or confession has been accepted by the trial judge on the record in open court and where the trial court vacates the entire plea without a clear and unequivocal claim by defendant of innocence of the crimes to which he has pled guilty, jeopardy is terminated and the statute precludes defendant's trial for those crimes because such trial is a violation of his constitutional right not to be placed twice in jeopardy for the same offenses." *Id.* ¶ 44.

¶ 12    Further, the appellate majority held that the double jeopardy violation amounted to structural error. *Id.* ¶ 46. Finally, as to the issue of the proper remedy, the appellate majority determined that there was no standing conviction because defendant was never sentenced on the charges to which he pled guilty. *Id.* ¶ 47. In light of this determination, the appellate majority remanded the matter to the trial court with directions to vacate the mittimus and order defendant's release. *Id.*

¶ 13    Though Justice Schmidt agreed that the evidence was insufficient to sustain defendant's conviction for criminal trespass, he "disagree[d] with the findings that (1) the trial court erred in *sua sponte* vacating defendant's guilty plea, (2) [the] protections against double jeopardy attached, and (3) defendant entered into a fully negotiated plea agreement." *Id.* ¶ 52 (Schmidt, J., concurring in part and dissenting

in part). Justice Schmidt concluded that the trial court's *sua sponte* vacatur of the plea was not clear or obvious error "where the defendant did all but shout 'I am innocent' during the proceedings." *Id.* ¶ 54. Accordingly, Justice Schmidt would find that the trial court did not abuse its discretion and that there was thus no need to conduct a plain error analysis. *Id.* Because jeopardy had not terminated improperly, Justice Schmidt opined that, due to the principle of "continuing jeopardy," the protections against double jeopardy were never triggered even if jeopardy had attached. *Id.* ¶¶ 56, 59. Justice Schmidt concluded that jeopardy had not attached to the guilty plea because the circuit court had not fully accepted it. *Id.* ¶ 58. Finally, Justice Schmidt disputed the majority's finding that defendant's plea was fully negotiated. *Id.* ¶ 62. Instead, Justice Schmidt deemed the plea to be only partially negotiated. *Id.* ¶ 64.

¶ 14                                          ANALYSIS

¶ 15          The State asks this court to reverse the portion of the appellate majority's judgment holding that defendant's domestic battery conviction violates the prohibition against double jeopardy. The State asserts that, because jeopardy had neither attached nor terminated improperly, defendant's double jeopardy claim fails. Specifically, the State contends that jeopardy did not attach because the trial court had not found defendant guilty nor imposed a sentence. As neither this court nor the United States Supreme Court have pinpointed the moment at which a guilty plea is accepted for purposes of determining when jeopardy attaches, the State also encourages this court revisit its holding in *People v. Jackson*, 118 Ill. 2d 179 (1987), *overruled on other grounds by People v. Stefan*, 146 Ill. 2d 324, 336-37 (1992). Relevant here, *Jackson* rejected an argument that jeopardy does not attach to a guilty plea until a sentence has been imposed and a judgment of conviction has been entered. *Jackson*, 118 Ill. 2d at 188. In the event we decline the State's invitation to revisit *Jackson*, the State maintains that, consistent with *Jackson*, jeopardy attaches, at the earliest, when a trial court accepts a guilty plea by entering a finding of guilty. See *Cabrera*, 402 Ill. App. 3d at 448. However, the State advocates for a determination by this court that jeopardy instead attaches to a guilty plea when the court imposes a sentence. Because the trial court did not impose sentence, signal its intended sentence, or agree to the State's recommendation, the

- 8 -

State asserts that the court's endorsement of the plea was only tentative and thus jeopardy did not attach.

¶ 16    The State argues further that, even if jeopardy attached, the trial court properly exercised its discretion in vacating the plea. Accordingly, jeopardy did not terminate improperly such that defendant's bench trial amounted to double jeopardy. See 720 ILCS 5/3-4(a) (West 2014). Finally, because the court entered judgment only on defendant's criminal trespass conviction, which was vacated by the appellate court, the State asks this court to remand to the trial court for sentencing on defendant's domestic battery conviction.

¶ 17    Defendant counters that jeopardy attached when the trial court found that defendant had voluntarily waived his rights and agreed to plead guilty, found the factual basis sufficient, and accepted the plea of guilty to misdemeanor domestic battery. Defendant disputes that a finding of guilty or the imposition of a sentence was necessary for jeopardy to attach to his guilty plea. Alternatively, defendant argues that, if this court adopts a rule that jeopardy attaches at sentencing, it should find that the trial judge's acceptance of what defendant deems a fully negotiated plea operated as a *de facto* sentencing hearing whereby the court imposed the State's recommended sentence despite its admonition to defendant that it was not bound by the recommendation and could impose any sentence allowed by law. Defendant also asserts that the court improperly terminated jeopardy by *sua sponte* vacating his plea where he did not claim to be innocent and attempt to enter an *Alford* plea. See *North Carolina v. Alford*, 400 U.S. 25, 38-39 (1970); *People v. Barker*, 83 Ill. 2d 319, 332-33 (1980). Lastly, defendant urges this court to affirm the appellate court's order remanding "the matter to the trial court with directions to vacate the mittimus and order [defendant's] release." See 2019 IL App (3d) 160494, ¶ 47. Alternatively, defendant asks this court to reinstate the guilty plea and remand the cause for resentencing.

¶ 18    Because defendant failed to object at trial and include the alleged error in a posttrial motion, our consideration of whether a double jeopardy violation occurred is subject to plain error review. See *People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010). However, the plain error rule allows a reviewing court to consider unpreserved claims of error where

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

Under both prongs, the burden of persuasion lies with the defendant. *Thompson*, 238 Ill. 2d at 613.

¶ 19 Here, defendant argues that the appellate majority properly determined that the double jeopardy violation constituted structural error. 2019 IL App (3d) 160494, ¶ 46. "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Thompson*, 238 Ill. 2d at 609. In such a case, prejudice to the defendant is presumed. *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 20 Defendant does not seek plain error review under the first prong, so we confine our review to the second prong. We begin by ascertaining whether any error occurred. See *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009).

¶ 21 Whether Jeopardy Attached

¶ 22 "The double jeopardy clause of the fifth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, provides that no persons shall 'be subject for the same offence to be twice put in jeopardy of life or limb.' " *People v. Bellmyer*, 199 Ill. 2d 529, 536-37 (2002) (quoting U.S. Const., amend. V). "The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *People v. Placek*, 184 Ill. 2d 370, 376-77 (1998). "The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit ***." *United States v. Jorn*, 400 U.S. 470, 479 (1971). The underlying idea behind the prohibition against double jeopardy

"is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88 (1957).

¶ 23 Both the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 10) and section 3-4(a) of the Code (720 ILCS 5/3-4(a) (West 2014)) ensure this same protection. See *Bellmyer*, 199 Ill. 2d at 537.

¶ 24 Defendant maintains that his subsequent bench trial subjected him to a second prosecution on the misdemeanor domestic battery charge. Whether defendant was twice placed in jeopardy for the same offense presents a question of law subject to *de novo* review. See *People v. Galan*, 229 Ill. 2d 484, 497 (2008).

¶ 25 "The starting point in any double jeopardy analysis, of course, is determining whether or not jeopardy had attached." *People ex rel. Mosley v. Carey*, 74 Ill. 2d 527, 534 (1979). The following rules govern:

"In Illinois, jeopardy attaches in a jury trial when the jury is empaneled and sworn. [Citation.] In a bench trial, jeopardy attaches ' "when the first witness is sworn and the court begins to hear evidence." ' [Citation.] Finally, jeopardy attaches to a guilty plea when the guilty plea is accepted by the trial court. [Citations.]" *Bellmyer*, 199 Ill. 2d at 538.

¶ 26 The understanding that jeopardy attaches to a guilty plea when the guilty plea is accepted by the trial court is echoed in section 3-4(a), "Effect of former prosecution," which provides in relevant part:

"A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if that former prosecution:

* * *

*** was terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts, or *after a plea of*

*guilty was accepted by the court*." (Emphasis added) 720 ILCS 5/3-4(a) (West 2014).

¶ 27    However, this court must now address the issue of when a guilty plea is accepted by a trial court. As indicated, this court's decision in *Jackson* touched on the issue. 118 Ill. 2d 179. In *Jackson*, the defendant agreed to plead guilty to driving under the influence (DUI) and illegal transportation of alcohol. *Id.* at 183. The court admonished the defendant as to his guilty pleas, accepted the pleas, and set a sentencing date. *Id.* Before the sentencing date, however, the court granted the State's motion to enter a *nolle prosequi* as to both charges. *Id.* Thereafter, the State indicted the defendant on two counts of reckless homicide. *Id.* The trial court granted the defendant's motion to dismiss count II on double jeopardy grounds and ruled that evidence of his DUI and illegal transportation of alcohol would not be admissible as to count I. *Id.* The appellate court affirmed, and the State was granted leave to appeal. *Id.*

¶ 28    Relevant here, *Jackson* addressed the State's initial argument that the defendant had not been placed in jeopardy on the DUI charge because it had nol-prossed that charge after the plea but before a sentence had been imposed. *Id.* at 188. In other words, the State's position was that jeopardy did not attach because a judgment of conviction had not yet been entered. *Id.*

¶ 29    *Jackson* explained that, in *People v. Chatman*, "this court said that the concept of jeopardy requires that the accused be placed on trial for the offense charged at a judicial proceeding aimed at reaching a final determination of his guilt or innocence of that offense." *Id.* (citing *People v. Chatman*, 38 Ill. 2d 265, 270 (1967)). In both the bench and jury trial contexts, "it is not necessary, for jeopardy to attach, that a judgment of guilty or not guilty be entered." *Id.* The court also observed that the defendant had been admonished as to the effect of his guilty plea and persisted in his plea and that the plea was accepted by the court. *Id.* at 189. Accordingly, "[n]othing further remained to be done to determine the defendant's guilt of the offense charged." *Id.*

¶ 30    We see no reason to depart from *Jackson*. In the context of a guilty plea, a formal finding of guilt or the imposition of a sentence is not necessary for jeopardy to attach. Where a defendant enters a plea of guilty, "it is unnecessary for the court to enter such a finding." See *People v. Dodge*, 411 Ill. 549, 550 (1952) (rejecting

argument that the trial court lacked jurisdiction to enter a sentence after the defendant pleaded guilty because it had not first entered a finding and verdict); *People v. Bute*, 396 Ill. 588, 591 (1947) (stating that, where a defendant enters a plea of guilty, "it follows, as a legal inference, that the court finds the defendant guilty and it is not necessary for the court to enter such a finding"). We further observe that this rule conforms with the established understanding of when jeopardy attaches in the bench or jury trial contexts—which occurs well before sentencing. See *Jackson*, 118 Ill. 2d at 188; *People v. Guillen*, 2014 IL App (2d) 131216, ¶ 32; see also, *e.g.*, *Peiffer v. State*, 88 S.W.3d 439, 445 (Mo. 2002) (*en banc*) ("sentencing has never been a prerequisite to the attachment of jeopardy"). The plain text of section 3-4(a) also makes no mention of the entry of a finding of guilt or sentencing. See 720 ILCS 5/3-4(a) (West 2014).

¶ 31       At the point of sentencing, moreover, a court has already adjudged a defendant guilty; the imposition of a sentence is no longer a possibility but a given. The word "jeopardy" is understood as placing the defendant at *risk* or *danger* of conviction and punishment. See Black's Law Dictionary 963 (10th ed. 2014) (defining "jeopardy" as "[t]he risk of conviction and punishment that a criminal defendant faces at trial"); Webster's Third New International Dictionary 1213 (2002) (defining "jeopardy" as "the danger that an accused person is subjected to when duly put upon trial for a criminal offense"); see also *Green*, 355 U.S. at 187 ("The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and *possible conviction* more than once for an alleged offense." (Emphasis added.)). The only potential risk associated with sentencing is that the amount or kind of punishment a defendant is to receive will be greater or different than agreed to or anticipated. Accordingly, we do not believe that a defendant's sentence informs the analysis of whether jeopardy has attached to a guilty plea. We thus need not reach the remainder of the State's arguments on this point nor the defendant's alternative arguments made in the event that this court adopts a rule that jeopardy does not attach until sentencing.

¶ 32       At the moment a trial court accepts a defendant's plea of guilty, the defendant forgoes a trial on the merits and abandons several fundamental rights. *Santobello v. New York*, 404 U.S. 257, 264 (1971) (Douglas, J., concurring) (stating "a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial [citation], to confront one's accusers [citation], to

present witnesses in one's defense [citation], to remain silent [citation], and to be convicted by proof beyond all reasonable doubt"); *Jackson*, 118 Ill. 2d at 188 ("When an accused enters a plea of guilty he is, in effect, waiving his right to trial either by a jury or by the court."); see also Ill. S. Ct. R. 402(a)(4) (eff. July 1, 2012). Concomitantly, the trial judge decides, in the exercise of his or her discretion, to permit the defendant to dispense with a trial and legally deem the defendant guilty of the relevant charge. See *People v. Henderson*, 211 Ill. 2d 90, 103 (2004) ("A decision of the circuit court with respect to the acceptance or rejection of a negotiated plea is reviewed for an abuse of discretion, and the judgment of the reviewing court will not be substituted for that of the trial court."); *People v. McCutcheon*, 68 Ill. 2d 101, 106 (1977) (noting that, when a guilty plea is accepted by the trial court, the court has determined that the plea is voluntary and that there is a factual basis for the plea).

¶ 33 Consequently, we regard this moment as most akin to "the start of a trial." See *Martinez v. Illinois*, 572 U.S. 833, 840 (2014) (*per curiam*) ("Jeopardy attaches when 'a defendant is "put to trial" ' " (quoting *Serfass v. United States*, 420 U.S. 377, 388 (1975))); see generally *id.* (overturning this court's decision in *People v. Martinez* that, despite the rule jeopardy attaches when a jury is empaneled and sworn, jeopardy had not attached because Martinez " 'was never at risk of conviction' " where " '[t]he State indicated it would not participate prior to the jury being sworn' " (quoting *People v. Martinez*, 2013 IL 113475, ¶ 39)). We reject those cases that opine that a defendant is not placed in jeopardy "in any meaningful sense" upon acceptance of a guilty plea. See, *e.g.*, *United States v. Santiago Soto*, 825 F.2d 616, 620 (1st Cir. 1987).

¶ 34 Therefore, this court holds that jeopardy attaches when the trial court unconditionally accepts defendant's plea. See, *e.g.*, *Guillen*, 2014 IL App (2d) 131216, ¶ 36 (noting that "[t]he majority of other courts have adopted the position that jeopardy attaches when a trial court unconditionally accepts the plea, regardless of whether that final acceptance occurs during the initial plea proceeding or thereafter").

¶ 35 Turning to the present case, we now consider whether the trial court unconditionally accepted the defendant's guilty plea. The State maintains that, despite the trial court stating that it "accepted" defendant's plea, the context makes

- 14 -

clear that it only found defendant's waiver of his rights knowing and voluntary. The State cites as dispositive the fact that defendant "did not unequivocally plead guilty" nor request to enter an *Alford* plea.

¶ 36    A trial court's decision to accept a guilty plea, however, is not dependent upon a defendant's unequivocal admission of guilt but the existence of certain requirements as delineated in Illinois Supreme Court Rule 402 (eff. July 1, 2012). The decision whether to accept a guilty plea is wholly within the court's discretion. See *id.*; *Henderson*, 211 Ill. 2d at 103 ("A decision of the circuit court with respect to the acceptance or rejection of a negotiated plea is reviewed for an abuse of discretion ***."); *Barker*, 83 Ill. 2d at 333; *People v. Church*, 334 Ill. App. 3d 607, 614-15 (2002). Here, the court stated: "[s]how the Court finds that defendant's *plea of guilty* and his waiver of his right to remain silent and his waiver of his right to a jury trial to be knowing and intelligently entered into and executed in writing, *accepted by the Court*." (Emphases added.). Following its determination that the plea was voluntary and a factual basis existed, the court clearly accepted defendant's guilty plea. In determining whether a court "accepts" a guilty plea, we can think of no clearer indication of a court's assent than the words "accepted by the Court." Thus, whatever comments defendant subsequently made that allegedly prompted the court to *sua sponte* vacate defendant's guilty plea do not inform this part of the analysis.

¶ 37    Because jeopardy attached when the trial court unconditionally accepted defendant's guilty plea, we now must consider whether jeopardy terminated in such a manner as to render the subsequent bench trial barred by double jeopardy. See *Martinez*, 572 U.S. at 841 ("The remaining question is whether the jeopardy ended in such a manner that the defendant may not be retried.").

¶ 38                    Whether Jeopardy Terminated "Improperly"

¶ 39    Before reaching the merits of whether jeopardy terminated improperly in the instant case, we briefly describe the concept of "continuing jeopardy." Section 3-4(a) forbids a subsequent prosecution for the same offense where the former prosecution terminated "improperly." 720 ILCS 5/3-4(a)(3) (West 2014). "In the parlance of double jeopardy case law, jeopardy 'continues' if *** the jeopardy that attached in the first trial remains open so that defendant can be reprosecuted for the

same crime without violating the bar against double jeopardy." *People v. Daniels*, 187 Ill. 2d 301, 310-11 (1999). Conversely, "[j]eopardy 'terminates' if the trial concludes under conditions in which defendant could not be retried without violating the double jeopardy rule, *e.g.*, if defendant is acquitted of a crime." *Id.* at 311.

¶ 40    In *Cabrera*, the appellate court applied the principle of continuing jeopardy to a guilty plea proceeding. 402 Ill. App. 3d at 449 (observing that "section 3-4(a)(3) makes no distinction between a jury or bench trial that terminates improperly and a guilty plea hearing that terminates improperly"). *Cabrera* explained that, like a bench or jury trial that terminates properly and thus allows for retrial, a guilty plea proceeding may likewise terminate properly under certain circumstances and permit successive prosecution. *Id.* Specifically, *Cabrera* likened a proper termination of a guilty plea hearing to a proper declaration of a mistrial during trial. *Id.* at 450.

¶ 41    Relevant here, in *Cabrera*, the judge accepted the defendant's plea of guilty to armed robbery after admonishing the defendant, concluding that the plea was entered freely and voluntarily, and finding a sufficient factual basis for the plea. *Id.* at 442. When the defendant was permitted to address the judge, it was revealed that he had two prior Illinois Department of Corrections sentences for which he had served several years. *Id.* The judge expressed astonishment over the deal made between the defendant and the State and conveyed to the defendant how lucky he was. *Id.* The following exchange was then had:

   " 'THE DEFENDANT: I hate to tell you the truth, Your Honor, you know what I'm saying, I plead guilty because of my background. I can't show my innocence. That's the only thing wrong with my life. Can't show my innocence because of my background.

   THE COURT: Are you telling me that you are innocent of this charge?

   THE DEFENDANT: Yes, Your Honor. Yes, Your Honor.' " *Id.* at 442-43.

¶ 42    Despite the defendant's protests, the trial judge vacated the plea and stated that he would not accept a guilty plea from an innocent person. *Id.* at 443. Subsequently, after a bench trial, the defendant was found guilty of all counts. *Id.* The defendant

was sentenced on the armed robbery counts, which included the armed robbery count to which he had pled guilty. *Id.*

¶ 43    In assessing whether jeopardy terminated improperly, the appellate court began by noting that, although Illinois courts are not prohibited from accepting guilty pleas from defendants who maintain their innocence, it is within a trial court's discretion to reject such pleas and reinstate a not guilty plea. *Id.* at 451. For this rule, *Cabrera* relied on this court's decision in *Hancasky*. *Id.* (citing *Hancasky*, 410 Ill. at 153). *Hancasky* provides that

> "a court may set aside or withdraw a plea of guilty, on its own motion and without the consent of a defendant, in cases where the evidence shows that the defendant is insane, or under some similar disability, or where the court has good reason to doubt the truth of the plea, or where it is affirmatively shown that the plea of guilty was induced by some promise on the part of the State's Attorney or others in authority, or where it is obvious that a defendant has been misinformed as to his rights." 410 Ill. at 154-55.

¶ 44    *Cabrera* rejected the defendant's argument that the judge had to ignore the defendant's protestations of innocence that occurred after the judge accepted the guilty plea and proceeded to sentencing. 402 Ill. App. 3d at 451-52. Instead, the appellate court concluded that the judge had good reason to doubt the truth of the plea and thus jeopardy had not terminated improperly. *Id.* at 451, 453.

¶ 45    Turning to the instant case, we must determine whether the trial judge properly exercised his discretion [1] in vacating *sua sponte* defendant's guilty plea. See *Hancasky*, 410 Ill. at 154-55 (evaluating the trial court's decision declining to withdraw a plea of guilty on its own motion for an abuse of discretion); *Cabrera*, 402 Ill. App. 3d at 450 (applying the abuse of discretion standard to the judge's decision to vacate *sua sponte* its acceptance of the defendant's guilty plea); *People v. Peterson*, 311 Ill. App. 3d 38, 46 (1999) (concluding that the trial court did not abuse its discretion in revoking acceptance of the defendant's guilty plea); see also *People v. Hughes*, 2012 IL 112817, ¶ 32 ("Generally, the decision to grant or deny

---

[1] At oral argument, defendant asserted that a higher standard of review should govern the question of whether the trial court properly vacated the plea *sua sponte*. Not only was this argument not contained in defendant's briefs, but defendant sets forth no supporting case law.

a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion."). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 46     Defendant argues that the appellate majority correctly concluded that the trial court had no good reason to doubt the truth of the plea. Defendant maintains that, unlike the defendant in *Cabrera*, he was not attempting to enter an *Alford* plea and his statements were not proclamations of innocence. Defendant further represents that his statements merely show that he was agreeing that the State's witnesses would testify in accordance with the factual basis and he was seeking leniency in allocution. At worst, defendant contends that his statements "questioned the subpoena powers of the State and attempted to explain the optics of the State's factual basis, especially considering that the State's factual basis included reference to conduct for which [he] was not pleading guilty." Defendant notes that he did not affirmatively consent to the vacatur of the plea and his comment that he "didn't want to be in here fighting [the charges]," demonstrated that he wished to continue with the plea. Thus, defendant asserts that this court should find that his "post-plea comments about the factual basis for his plea were not intended to cast doubt on the plea or an attempt to enter into an *Alford* plea."

¶ 47     The State, however, contends that a defendant may provide a trial court with reason to doubt the truth of a plea by asserting his innocence. Specifically, the State observes that defendant repeatedly cast doubt upon his plea and did not admit his guilt. After the State presented its factual basis, the State asserts that, when the trial court asked defendant if he agreed with the factual basis, defendant denied that the described events had occurred. In response, the court asked defendant whether the witnesses would testify in accordance with the factual basis. Defendant backtracked and agreed. However, defendant later asserted that, if a trial were held or if the witnesses did testify, they would testify differently. Because the court was not required to accept the guilty plea when defendant first cast doubt on his guilt, the State maintains that it was not "required to finalize the plea" when defendant again cast doubt upon his guilt.

¶ 48    Before addressing the parties' arguments, we deem it necessary to review the appellate majority's analysis of this issue. A majority of the appellate court noted that *Cabrera* "explained the concept of claim of innocence, *interchanging it* with the rule that the trial court may withdraw a guilty plea when it has good reason to doubt the truth of the plea." (Emphasis added.) 2019 IL App (3d) 160494 ¶ 34. In analyzing whether the trial court had good reason to doubt the truth of the plea, the appellate majority began by noting that the trial court had "clarified for [defendant] (as required by Illinois Supreme Court Rule 402(d)(3) (eff. July 1, 2012)) that even if he pled guilty, thereby fulfilling his part of the agreement, the judge was free to deviate from the State's part of the agreement regarding its sentencing recommendation." *Id.* ¶ 37. Thus, defendant's "probation was not assured." *Id.* Thereafter, the appellate majority noted how, after the factual basis was recited, the court clarified that the prosecutor was reducing the charges to misdemeanors. *Id.* ¶ 38. According to the appellate majority, the "prosecutor responded in the affirmative and expressly justified the reduction by stating that it had been made at the specific request of the complaining witnesses—defendant's parents." *Id.* The appellate majority surmised: "[a]ccepting that statement as true, it would not be unreasonable to infer from that fact that [defendant's] parents might also have voiced to him an intent to not appear or testify against him at trial." *Id.* Thereafter, the appellate majority pointed to the exchange between defendant and the court that occurred when "the court had earlier asked defendant if the State's factual recitation was what happened." *Id.* ¶ 39. The appellate majority emphasized that the court knew that defendant did not agree with all the allegations in the factual basis but nevertheless accepted the plea. *Id.* Finally, the appellate majority observed that, when defendant was given the opportunity to make a statement prior to sentencing, defendant

> "was faced with a dilemma at that point. Did he remain silent and hope that the judge, who had possibly already hinted that he thought defendant might have received too good a deal, would honor the State's sentencing recommendation or did he try to explain what he believed to be inaccuracies in the State's recited factual basis in the hope of protecting the State's recommendation from judicial deviation? It appears from the beginning of his statement that he had chosen the latter option." *Id.* ¶ 41.

- 19 -

After faulting the trial court for interrupting defendant when defendant began to again call the factual basis into question, the appellate majority noted that defendant had not previously claimed to be innocent of the charges to which he pled guilty and that no reasonable basis supported an inference that he was making such a claim. *Id.* ¶¶ 42-43. According to the appellate majority, defendant was simply referring to the "optics" of the factual basis. (Emphasis omitted.) *Id.* ¶ 43. Indeed, the factual basis looked and sounded " 'bad' " and contained allegations related to crimes to which defendant was not pleading guilty, *i.e.*, criminal trespass to a residence. *Id.* To support its contention that defendant was merely referring to the "optics" of the factual basis, the majority cited its own determination, on appeal, that the State's inability to prove those allegations at trial required reversal of defendant's conviction for felony criminal trespass. *Id.* Finally, the majority then concluded that, because "a clear and unequivocal claim by defendant of innocence of the crimes to which he ha[d] pled guilty" had not occurred, "there [was] no evidence to show that the guilty plea proceeding terminated properly." *Id.* ¶¶ 44-45.

¶ 49    We find fault with the appellate majority's analysis in several respects. First, as noted by the dissent, the appellate majority engaged in speculation to arrive at its conclusion. See *id.* ¶ 54 (Schmidt, J., concurring in part and dissenting in part). The appellate majority framed the guilty plea proceeding from defendant's point of view and drew unsubstantiated assumptions. Nowhere in the record does it affirmatively support the appellate majority's representations of what defendant was thinking or his motivations for saying what he did. For example, the majority concludes that, at the point the trial court accepted defendant's plea, it knew that defendant did not agree with "all" of the allegations. One could just as easily conclude that defendant did not agree with any of the allegations; it is impossible to say. Second, and in a similar vein, we are not concerned nor tasked with deciphering the reasons why defendant made the comments he did. As mentioned, the appellate majority commented that, accepting the prosecutor's statement as true that the charges were being reduced due to the request of the complaining witnesses, *i.e.*, defendant's parents, "*it would not be unreasonable to infer* from that fact that [defendant's] parents might also have voiced to him an intent to not appear or testify against him at trial." (Emphasis added.) *Id.* ¶ 38 (majority opinion). The appellate majority's analysis was not in accord with the abuse of discretion standard. See *People v. Burtron*, 376 Ill. App. 3d 856, 863 (2007) ("A reviewing court does not consider

whether it would have made the same decision if placed in the position of the trial court ***.""). Furthermore, we are unsure how the majority reached the conclusion that defendant was simply trying to explain the "optics" of the factual basis based upon the appellate majority's determination, made more than three years after the March 10, 2016, change of plea hearing, that the State failed to prove those allegations relating to a different crime. Finally, the majority construed *Hancasky* far too narrowly.

¶ 50    As mentioned, *Hancasky* provides that a trial court may *sua sponte* vacate a guilty plea where the trial court has "good reason to doubt the truth of the plea." 410 Ill. at 155. Certainly, *Cabrera* provides the clearest example of a situation where a trial court would have reason to doubt the truth of the plea—the defendant made it explicitly clear that he was innocent but pleading guilty nonetheless. See 402 Ill. App. 3d at 443. Contrary to the instant appellate majority's interpretation, however, *Cabrera* does not stand for the proposition that the *Hancasky* exception is met only where "a clear and unequivocal claim by defendant of innocence of the crimes to which he has pled guilty," *i.e.*, an *Alford* plea, has been made. See 2019 IL App (3d) 160494, ¶¶ 34-35, 44. Defendant likewise argues that, because he did not attempt to enter an *Alford* plea, the *Hancasky* exception was not met. The meaning of "good reason to doubt the truth of the plea" is not so narrow, nor is the discretion of a trial judge so confined. See *Hancasky*, 410 Ill. 148; see also *Martinez*, 572 U.S. at 840 (disparaging the application of rigid and mechanical rules in answering the question of whether jeopardy has terminated improperly); *People ex rel. Roberts v. Orenic*, 88 Ill. 2d 502, 507-08 (1981) ("The facts of each case must be examined to determine the credibility of a double jeopardy claim."). We also note that *Hancasky* predated *Alford* by nearly 20 years. See *Alford*, 400 U.S. 25; *Hancasky*, 410 Ill. 148.

¶ 51    Based on the record before us, we cannot say that the judge abused his discretion in vacating the guilty plea *sua sponte*. We note the dichotomy between reviewing a record for the presence of evidence demonstrating a "good reason to doubt the truth of the plea" where defendant failed to object and preserve the issue for review. After the factual basis was recited, the judge asked defendant, "[i]s that what happened?" Defendant replied, "Not—no, but I don't want to be in here fighting it. I'd rather—." The judge then asked him, "[i]f you don't agree that that's what happened, do you think that's what the witnesses would say if they were

here?" Defendant replied, "Yeah." The judge then immediately accepted the plea. When permitted to give a statement, defendant explained, "I want to say I know it sounds bad in the statement that was given, but if it was to go to trial no one would be coming to court. Or if they did they would say that—." The judge interjected and vacated the plea.

¶ 52    Though defendant and the appellate majority point out that the trial judge accepted the plea already knowing that defendant took issue with the State's factual basis, the judge had at least assured himself that defendant agreed that the witnesses would testify in conformance with the factual basis should the case go to trial. It is evident that the judge was assessing whether defendant's guilty plea was knowing and voluntary. See *Barker*, 83 Ill. 2d at 333 (noting "a court is not precluded from accepting a plea of guilty, in spite of a defendant's claim of innocence, if the record reflects a factual basis from which a jury could find the defendant guilty of the offense to which the plea was entered"); Ill. S. Ct. R. 402(c) (eff. July 1, 2012) ("The court shall not enter final judgment on a plea of guilty without first determining there is a factual basis for the plea.").

¶ 53    However, when defendant later addressed the trial court, he again expressed his disapproval of the factual basis by stating that it "sound[ed] bad in the statement that was given." Yet, for the first time, defendant then made clear that he no longer conceded that, if the case went to trial, the witnesses would even appear to testify or would testify in conformance with the factual basis. Defendant need not have finished his statement for the court to have ascertained that defendant was now additionally challenging the State's ability to prove the allegations set forth in the factual basis.

¶ 54    For purposes of determining whether there is "good reason to *doubt* the truth of the plea," we see no appreciable difference between a defendant who explicitly claims to be innocent and one who denies that the events in question occurred in the manner described by the State or that the State could present supporting witness testimony. (Emphasis added.) See, *e.g.*, *Peterson*, 311 Ill. App. 3d at 46 (finding the trial court did not abuse its discretion in vacating guilty plea where the defendant stated three times that he was " 'wrongly accused' " of the crimes and that he was sick, seriously ill, and needed health care). As noted by defendant, he had not entered an *Alford* plea. Instead, he entered a plea of guilty, yet his wholesale

repudiation of the factual basis indicated a misunderstanding of the consequences of pleading guilty, *i.e.*, that he understood the nature of the charge against him and, by so pleading, stipulated to the facts contained in the factual basis. See Ill. S. Ct. R. 402(a), (b) (eff. July 1, 2012); see also *Barker*, 83 Ill. 2d at 329-30 (noting that the reasons cited as to why the defendant's argument his plea was rendered involuntary were that the trial court failed to admonish him regarding the requisite specific intent, defendant had agreed with the factual basis, and defendant had no question about the charge or what it meant); *People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 32 (1986) ("The determination required by [Rule 402(c)] is intended to protect those accused of crime by ensuring that they have not pleaded guilty by mistake or under a misapprehension, or been coerced or improperly advised to plead to crimes they did not commit."); *Bellmyer*, 199 Ill. 2d at 538-39 (stating stipulated bench trials are considered equivalent to guilty pleas where a defendant "stipulates not only to the evidence, but also to the sufficiency of the evidence to convict").

¶ 55    Because the trial court did not abuse its discretion in vacating defendant's guilty plea *sua sponte*, defendant's bench trial did not offend the bar against double jeopardy. Because no error occurred, defendant cannot meet his burden of demonstrating plain error. See *Thompson*, 238 Ill. 2d at 613.

¶ 56                              Defendant's Alternative Arguments

¶ 57    Alternatively, defendant first asserts that the trial court abused its discretion by vacating his guilty plea without a recognized legal basis or an express request from the parties and without following any recognized procedures pursuant to Illinois Supreme Court Rules 604(d) (eff. July 1, 2017) and 605(c)(2), (5) (eff. Oct. 1, 2001).

¶ 58    For the reasons described above, we reject defendant's argument that the trial court lacked a recognized legal basis for vacating the plea. Because the court had "good reason to doubt the truth of the plea" pursuant to *Hancasky*, the court need not have obtained the parties' consent to vacate the plea. Accordingly, Rule 604(d) has no application to these facts. Ill. S. Ct. R. 604(d) (eff. July 1, 2017) (directing the defendant to file a motion to withdraw the plea of guilty and vacate the judgment where the defendant is challenging the plea). Rule 605(c) also does not apply

because it is implicated when judgment has been entered and at the time of sentencing. Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001).

¶ 59    Second, defendant alternatively contends that trial counsel was ineffective for failing to object to the "double jeopardy violation and the judge's capricious *vacatur* of the negotiated plea agreement." To show ineffective assistance of counsel, defendant must establish that counsel's failure to so object was both deficient and caused him prejudice. See *People v. Veach*, 2017 IL 120649, ¶ 30. As noted by the State, defendant cannot demonstrate prejudice because there is no reasonable probability that an objection would have resulted in the trial court permitting defendant to persist in his plea in light of defendant's repudiation of the factual basis.

¶ 60                                         CONCLUSION

¶ 61    In the context of a guilty plea proceeding, jeopardy attaches when the trial court unconditionally accepts the guilty plea. A formal finding of guilt is not required, nor is imposition of a sentence. See *Jackson*, 118 Ill. 2d at 188-89. Here, the court unconditionally accepted defendant's guilty plea, and therefore jeopardy attached. Jeopardy did not, however, terminate improperly, where the court *sua sponte* vacated defendant's guilty plea. The court did not abuse its discretion in vacating the plea because it had "good reason to doubt the truth of the plea," pursuant to *Hancasky*. See 410 Ill. at 154-55. Because jeopardy did not terminate improperly, (720 ILCS 5/3-4(a) (West 2014)), defendant's subsequent bench trial on the same offense did not violate the prohibition against double jeopardy. As no double jeopardy violation occurred, no error, let alone plain error, was present. See *Thompson*, 238 Ill. 2d at 613. Because defendant cannot demonstrate prejudice, his claim of ineffective assistance of counsel also fails. See *Veach*, 2017 IL 120649, ¶ 30.

¶ 62    Accordingly, the judgment of the appellate court is reversed in part. Defendant's conviction for misdemeanor domestic battery is reinstated, and the cause is remanded to the trial court for sentencing thereon.

¶ 63    Appellate court judgment affirmed in part and reversed in part.

- 24 -

¶ 64        Circuit court judgment affirmed in part and reversed in part.

¶ 65        Cause remanded.