2026 IL App (1st) 220494-UB
No. 1-22-0494
Order filed June 5, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 8698 |
| | ) | |
| ANTRELL JOHNSON, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Affirmed. Trial counsel did not provide ineffective assistance by failing to call a second alibi witness.

¶ 2    In Antrell Johnson's first appeal, we reversed his conviction after finding the eyewitness identifications insufficient to prove him guilty beyond a reasonable doubt. Our supreme court reversed that judgment and remanded for us to address the remaining unresolved issue—whether trial counsel provided ineffective assistance by failing to call a second alibi witness, Vernon Johnson. *People v. Johnson*, 2026 IL 131337, ¶ 104.

¶ 3    Johnson contends Vernon's testimony would have strengthened Kennedi Myles's alibi testimony. We disagree. Vernon's proposed testimony was weak, uncertain, and contradicted Myles's account of Johnson's whereabouts at the time of the shooting. Thus, Johnson fails to show a reasonable probability that the trial's result would have differed had Vernon testified. We affirm.

¶ 4                                          Background

¶ 5    As this appeal involves an unresolved issue from our earlier decision, we recite only those facts necessary to resolve the question on remand: Whether Johnson's counsel was ineffective in failing to call a second alibi witness, Johnson's cousin, Vernon Johnson.

¶ 6    The jury found Johnson guilty of first degree murder and that he personally discharged a firearm that proximately cause the death of Taurean "Tori" Tyler (720 ILCS 5/9-1(a)(1), (2) (West 2016)) and found him not guilty of attempted first degree murder of DeAngelo Mixon (720 ILCS 5/8-4(a) (West 2016)).

¶ 7    Several witnesses identified Johnson as the shooter. Tristan Thomas identified that Johnson in a photo array and at trial, though he acknowledged the shooter's face was partially covered. Mixon identified Johnson in a photo array and video-recorded statement but recanted portions of those identifications at trial, testifying that he was unsure who shot him. Eyewitness Janeese Washington identified Johnson in a photo array and again at trial. Security video depicted a person in white pants and a dark jacket running from the area immediately after the shooting.

¶ 8    Police officers testified eyewitnesses described the shooter shortly after the shooting.

¶ 9    Johnson's defense centered on an alibi. His former girlfriend, Kennedi Myles, testified that she was with Johnson at his grandmother's house on 67th Street and Winchester Avenue, along with his daughter, his cousin Vernon "Mook" Johnson, and several other people. Myles met

Johnson there in the afternoon but was not sure of the exact time. At one point, Myles remained inside the house while Johnson and Vernon were on the porch. Shortly after she had arrived, Myles heard gunshots as she sat in the living room. She saw Johnson push the back door open and bring his daughter inside.

¶ 10    On cross-examination, Myles testified that she dated Johnson for about a year afterward. She had remained at his grandmother's house for a few hours that day. The sun was "about to set" when she left. Myles confirmed that she had given a statement to an investigator before testifying, but did not recall stating that she and Johnson arrived at her house around 6 or 7 p.m. that evening. Myles "[p]ossibly" remembered previously stating that she arrived at her house between 7 and 7:30 p.m. She explained that, by the time she and Johnson arrived at her house, "it was about dark" because it took roughly an hour to get there from 67th and Winchester.

¶ 11    Myles testified that she heard the gunshots about 30 to 40 minutes after arriving at Johnson's grandmother's house. She was not sure what time she arrived, as the incident was three years ago. Myles could not recall telling an investigator that she arrived around 2 or 3 p.m. If she had, she would have heard the shots around 3:30 p.m. Myles spent the entire day with Johnson, except when he stepped briefly onto the front porch with Vernon. Johnson left Myles's house around 8 or 9 p.m. to go to his mother's house.

¶ 12    In a posttrial motion, new counsel argued trial counsel was ineffective for failing to call Vernon Johnson as an alibi witness. Attached as an exhibit was Vernon's affidavit averring that he told Johnson's public defender before trial that he was with Johnson on his front porch at the time of the shooting and so could not have been at the shooting.

¶ 13    During a hearing on the motion, counsel argued that Johnson was denied his constitutional rights to due process and a fair trial because, although Vernon's testimony was "extraordinarily important," trial counsel did not name him in Johnson's answer or call him as an alibi witness. Under questioning by the court, counsel confirmed that Johnson had provided Vernon's name as a potential alibi witness to someone at the Public Defender's office. The court set a hearing for Vernon to testify.

¶ 14    At the hearing, Vernon testified that around 6 p.m., he and Johnson were on the porch on the 6700 block of South Winchester Avenue, along with his one-year-old son, his son's mother, and Johnson's daughter, when they heard gunshots and entered the house. Vernon testified Johnson remained at the house for probably three to four hours. Vernon did not see Johnson in possession of a weapon or shoot that day.

¶ 15    When approached by Johnson's public defenders, Vernon told them Johnson was with him on the evening of the incident. They stated that they might call him as a witness, but he never heard from them or an investigator. Vernon was later approached by Johnson's new counsel and prepared the affidavit.

¶ 16    On cross-examination, Vernon acknowledged that he was close with Johnson, spoke with him daily, and never contacted authorities with the alleged alibi information. He recalled it was summertime when Johnson's public defenders visited him, but did not remember the year. When asked if he told the attorneys that he was with Johnson the day of the shooting, he responded, "Was it '17? I don't know what year it was. I think it was April." Vernon was approached by Johnson's "female" public defender a second time. She asked him some questions in a hallway when he was on his way to court and he "told her," but he could not recall the date or the year.

¶ 17    The court denied Johnson's posttrial motion.

¶ 18                                    Analysis

¶ 19    Johnson contends that Vernon's testimony would have corroborated Myles's testimony and added the details hers lacked, strengthening his alibi defense.

¶ 20    A defendant in a criminal proceeding has a constitutional right to the effective assistance of counsel. *People v. Lewis*, 2022 IL 126705, ¶ 44. We evaluate a claim of ineffective assistance of counsel under the two-prong standard in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 204 Ill. 2d 504, 526 (1984). *People v. Cross*, 2022 IL 127907, ¶ 19. To prove a claim of ineffective assistance of counsel, a defendant must show (i) that counsel's performance fell below an objective standard of reasonableness, and (ii) that counsel's deficient performance prejudiced the defendant. *Id.* A defendant must satisfy both prongs to prevail. *People v. Pingelton*, 2022 IL 127680, ¶ 53. Because the prejudice prong is dispositive of the outcome, we proceed directly to it. *People v. Eubanks*, 2021 IL 126271, ¶ 31.

¶ 21    Under the prejudice prong, the defendant bears the burden of showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lewis*, 2022 IL 126705, ¶ 46. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.* "Where, as here, a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent counsel's errors, the factfinder would have had a reasonable doubt respecting guilt." *People v. Johnson*, 2021 IL 126291, ¶ 54. Under *Strickland*, a defendant must " 'affirmatively prove' that prejudice resulted from counsel's errors." *Lewis*, 2022 IL 126705, ¶ 46. We review claims of ineffective assistance of counsel *de novo*. *Id*. ¶ 48.

¶ 22     Johnson has failed to affirmatively prove a reasonable probability that Vernon's testimony would have resulted in a different outcome at trial, that is, the jury would have had a reasonable doubt regarding guilt. *Johnson*, 2021 IL 126291, ¶ 54.

¶ 23     Evidence at trial established that Tyler was shot and killed around 7:30 p.m. in the area of 69th and Honore Streets. If Vernon testified at trial in accordance with his affidavit attached and his testimony at the hearing, he would testify that he was with Johnson on the front porch,  heard gunshots at around 6 p.m., and went inside, remaining there for another three to four hours, about 9 or 10 p.m.

¶ 24     But, Vernon's testimony at the posttrial hearing was weak, demonstrating an inability to recall with particularity dates and years of the events to which he testified. His testimony was also vague regarding when he discussed those events with Johnson's prior counsel. Further, Vernon was Johnson's close cousin and spoke to him daily. Thus, it is likely his testimony that he was with Johnson until about 9 or 10 p.m. would have carried little weight, particularly since he had not contacted the authorities with the alibi even after Johnson's two public defenders came to his house. See *People v. Gabriel*, 398 Ill. App. 3d 332, 342 (2010) ("trial court is not obligated to believe a defendant's alibi witnesses over the State's witness, especially where the defendant's witnesses are related to the defendant and failed to come forward during the initial investigation").

¶ 25     To be sure, as Johnson points out, Vernon's testimony corroborates Myles's testimony to an extent. Similar to Vernon's testimony, Myles testified that she met Johnson at the home sometime in the afternoon, Johnson and Vernon were on the porch when the gunshot sounds occurred around 3:30 p.m. and then Johnson came indoors.

¶ 26     Still, Vernon's purported alibi contradicts Myles's testimony. Vernon asserted that he was with Johnson at least from 6:00 p.m. until 9:00 p.m. or 10:00 p.m. that night. Myles, in contrast, testified that sometime around 6 to 7 p.m., or perhaps 7 to 7:30 p.m., she and Johnson arrived at her home, which was about an hour away. Myles testified that Johnson remained there with her until around 9 p.m. Although Myles was not certain when they arrived at her house, she stated it was almost dark, and that the sun set around 7 p.m. Thus, Vernon's proposed testimony that he and Johnson were together at 7:30 p.m., the time of the shooting, contradicts Myles's testimony that Johnson was with her an hour away at that time. See *People v. Jones*, 399 Ill. App. 3d 341, 371-72 (2010) (trial counsel's decision not to call additional alibi witnesses whose testimony would contradict its alibi witness was not arguably ineffective).

¶ 27     Johnson has failed to meet his burden to establish prejudice resulting from trial counsel's failure to call Vernon to testify. See *People v. Gaines*, 2020 IL 125165, ¶ 61.

¶ 28     Affirmed.