**2022 IL 127680**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 127680)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JOHN PINGELTON, Appellant.

*Opinion filed November 28, 2022.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Anne M. Burke, Michael J. Burke, Overstreet, Carter, and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1 Petitioner, John Pingelton, challenges the second-stage dismissal of his postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Petitioner contends that he was deprived of his right to procedural due process because the circuit court of Sangamon County granted the State's motion to dismiss without giving him notice and an opportunity

to respond. The appellate court affirmed, holding that the procedural due process violation relating to the dismissal of the petition was harmless error. 2021 IL App (4th) 180751, ¶¶ 32-34. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                I. BACKGROUND

¶ 3                           A. Conviction and Appeal

¶ 4        Petitioner was charged with two counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2004)) on K.S. and A.H., who were 16 years old at the time of the offense. The evidence at trial showed that on July 7, 2005, K.S. and A.H. were at petitioner's home, where he forcibly placed his penis in the vagina of K.S. and his fingers in the vagina of A.H. In addition, the State presented the testimony of Dr. Dennis Adams and Dr. Robert Sliwa, the emergency medicine physicians who examined the victims after the offenses.

¶ 5        Dr. Adams testified that he was board-certified in emergency medicine and had practiced as an emergency physician for 25 years. He also testified that he was familiar with the literature on sexual assault examinations and had examined approximately 20 victims of sexual assault in the course of his career. Dr. Adams performed a pelvic examination of A.H. on July 17, 2005, which revealed no evidence of vaginal trauma. However, based on his experience and the relevant literature, Dr. Adams opined that the absence of trauma was not inconsistent with A.H.'s allegation that petitioner inserted his fingers into her vagina. Dr. Adams explained that, in most of the sexual assault examinations he had performed, he did not find physical evidence of trauma.

¶ 6        On cross-examination, Dr. Adams testified that he had no opinion as to whether A.H. was sexually assaulted. He acknowledged that, in some of the other sexual assault examinations he had performed, he did find evidence of trauma but that was not always the case. He also acknowledged that he did not know the underlying facts of the prior cases in which he performed sexual assault examinations. He further acknowledged that he is not a gynecologist and had never used, or been trained to use, a colposcope, which he described as an instrument used to magnify findings during a pelvic examination.

¶ 7 Dr. Robert Sliwa testified that he was board-certified in emergency medicine and had examined more than 100 sexual assault victims in the course of his practice. He also testified that he was familiar with the literature concerning sexual assault examinations. Dr. Sliwa testified that he examined K.S. on July 27, 2005, but found no evidence of vaginal trauma. Based on his experience and the relevant literature, however, Dr. Sliwa opined that the absence of such trauma was not inconsistent with an allegation of sexual assault. He noted that in the majority of cases in which an adult woman or postpubescent girl is sexually assaulted, no evidence of trauma is found. He further explained that K.S. reported that the assault occurred several weeks before his examination and, therefore, the trauma "would have cleared up" by the time he examined her. In addition, Dr. Sliwa testified that K.S.'s report of vaginal bleeding at the time of the assault did not affect his opinion.

¶ 8 On cross-examination, Dr. Sliwa testified that he had no opinion as to whether K.S. was sexually assaulted. He acknowledged that he is not a gynecologist but explained that he had received some training in the field, although not in the use of a colposcope. Dr. Sliwa agreed that the use of a colposcope during his examination of K.S. might have revealed evidence of trauma that was not visible to the naked eye. He also agreed that it is possible for evidence of trauma to be detected weeks after an assault.

¶ 9 The jury found petitioner guilty of both counts, and the trial court sentenced him to consecutive 10-year prison terms. The appellate court affirmed on direct appeal. *People v. Pingelton*, No. 4-07-0133 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10 In December 2015, petitioner *pro se* filed a postconviction petition alleging, *inter alia*, that he received ineffective assistance of both trial and appellate counsel. With regard to his trial attorney, petitioner claimed that his counsel failed to object to the presentation of improper expert testimony by Dr. Adams and Dr. Sliwa. With regard to his appellate counsel, petitioner claimed that his attorney failed to raise that issue on direct appeal. The circuit court advanced the petition to the second stage and appointed counsel to represent petitioner.

¶ 11 In March 2016, the State filed a motion to dismiss petitioner's petition, arguing that it contained claims that were conclusory, meritless, waived, and barred by *res judicata*. The motion was served on petitioner's appointed counsel.

¶ 12        Almost two years later, in February 2018, postconviction counsel filed a motion to withdraw, which was supported by a memorandum addressing petitioner's claims and a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In his motion to withdraw, postconviction counsel argued that the claims in petitioner's *pro se* petition could not be supported as a matter of law and that the record revealed no other meritorious issues to be asserted in postconviction proceedings. Regarding petitioner's contention that trial and appellate counsel were ineffective for failing to object to the opinion testimony by Dr. Adams and Dr. Sliwa, the motion noted that the record established that the prosecution had disclosed the victims' medical records before trial. The motion further explained that both doctors had been properly identified as treating physicians during the trial because their consultation was conducted well before litigation and was for treatment purposes only. The motion explained that Illinois courts have permitted treating physicians to offer opinions during their testimony at trial because such opinions are a product of their observations rather than a contemplation of litigation.

¶ 13        Appointed counsel's Rule 651(c) certificate attested that he had consulted with petitioner in person and by mail to ascertain his contentions regarding the deprivation of his constitutional rights, examined the record of the proceedings of the trial and all appellate proceedings and postconviction pleadings, and had made all necessary amendments to the *pro se* postconviction petition or determined that there are no meritorious constitutional issues to be presented in the postconviction proceedings.

¶ 14        Petitioner filed two responses to counsel's motion to withdraw. In the first response, petitioner argued that counsel did not review his *pro se* claims or the record and failed to raise additional claims that petitioner had proposed. Petitioner further contended that, if the prosecution had disclosed the victims' medical records before trial, then trial counsel was ineffective for failing to impeach the victims and treating physicians with purported discrepancies between the records and the witnesses' testimony. Petitioner also reiterated his contention that trial counsel was ineffective for failing to object to presentation of the treating physicians as expert witnesses. Petitioner requested that the court allow appointed counsel to withdraw, permit him to amend his *pro se* petition, and advance the petition to the third stage.

¶ 15 In his second response, petitioner asserted that his petition presented claims of constitutional deprivations that warranted an evidentiary hearing, and he repeated his assertion that trial counsel was ineffective for failing to object to Dr. Sliwa testifying as an expert witness. He also argued that appointed postconviction counsel was ineffective and asked the court to advance his petition to the third stage.

¶ 16 Appointed postconviction counsel filed a reply, reiterating his conclusion that petitioner had no meritorious issues to be argued in postconviction proceedings.

¶ 17 On May 8, 2018, the circuit court made a docket entry indicating that the case was set for a "status" hearing the following day. At that hearing, the State and postconviction counsel appeared personally, and petitioner appeared via telephone. The circuit court first heard argument from the State on its motion to dismiss, during which the State said it would "adopt and incorporate all of the arguments that are contained within [postconviction counsel's motion to withdraw]." The State further argued that petitioner's trial attorney was not ineffective because he was able to elicit favorable testimony from the State's experts. Postconviction counsel did not respond to the State's arguments in support of the motion to dismiss.

¶ 18 The circuit court then addressed the motion to withdraw filed by postconviction counsel. In opposition to his appointed counsel's argument, petitioner disputed the grounds asserted as the basis for withdrawal. In particular, he asserted that his appointed counsel had not adequately reviewed the record and presented his claims and that his trial counsel was ineffective for failing to object to the treating physicians' testimony because the State did not include the physicians on its witness list. He also argued that Dr. Sliwa should not have been permitted to offer expert testimony that went beyond his treatment of K.S. Petitioner also requested that the circuit court "remove" appointed counsel and allow him to proceed *pro se*.

¶ 19 Postconviction counsel responded that he had examined petitioner's claims, concluded they were meritless, and, therefore, requested leave to withdraw. As to petitioner's challenge to the treating physicians' qualifications to offer expert testimony, counsel explained that the physicians were "experts purely due to their knowledge and experience."

¶ 20 The circuit court took the matter under advisement and issued a written ruling on May 22, 2018. In that order, the court granted postconviction counsel's motion

to withdraw but did not expressly state the reasons underlying that decision. The court also granted the State's motion to dismiss, finding, *inter alia*, that none of petitioner's allegations indicated that he had received "unreasonable" assistance by his trial attorney or that he was prejudiced by counsel's alleged failures. The petition was dismissed because petitioner had failed to make a substantial showing of a constitutional violation.

¶ 21 Petitioner's *pro se* motion to reconsider asserted that the court had failed to address all of his claims, that appointed counsel falsely certified compliance with Rule 651(c), and that it was unfair to grant the State's motion to dismiss without providing him notice of the motion and an opportunity to respond. After hearing argument, the circuit court denied the motion.

¶ 22 On appeal, petitioner argued that the circuit court violated his right to procedural due process by granting the State's motion to dismiss without giving him notice of the motion and an opportunity to respond. 2021 IL App (4th) 180751, ¶¶ 6, 30, 32. He further argued that the circuit court erred in granting appointed counsel's motion to withdraw because his *pro se* petition raised the potentially meritorious claim that he was denied effective assistance of trial and appellate counsel. *Id.* ¶¶ 6, 30, 36.

¶ 23 The appellate court affirmed. *Id.* ¶¶ 6, 30, 75-76. Initially, the appellate court concluded that petitioner had not been provided sufficient notice of the State's motion to dismiss or given an opportunity to respond before the circuit court granted the motion. *Id.* ¶ 32. The court noted that, based on the procedure employed by the circuit court, the only party that addressed the motion to dismiss was the State, while postconviction counsel and petitioner addressed the motion to withdraw exclusively. *Id.* ¶ 33. In addition, the court also observed that the motion to dismiss was served on postconviction counsel and that the record did not indicate that petitioner had personally received the motion. *Id.* ¶ 34. Further, the appellate court reasoned that, because the motion to dismiss had been filed two years before the hearing, petitioner had no reason to believe that the motion would be argued at that hearing, which had been set for "status." *Id.* Moreover, because petitioner was still represented by counsel when the State's motion was argued, he could not have personally responded to that motion. *Id.* The appellate court held that the circuit

court erred by granting the motion to dismiss without hearing argument from petitioner. *Id.*

¶ 24    However, the appellate court ultimately concluded that error was harmless, where petitioner's claim of ineffective assistance of trial counsel lacked merit. *Id.* ¶¶ 32, 34, 73. The court explained that, because trial counsel's decision not to object to the expert testimony of the two doctors was a matter of trial strategy, it could not form the basis for a claim of ineffective assistance of counsel. *Id.* ¶¶ 36, 44, 68-71. The court noted that the Illinois Rules of Evidence do not require that the trial court certify a witness as an expert before that witness may provide opinion testimony. *Id.* ¶ 46 (citing Ill. Rs. Evid. 702 to 705 (eff. Jan. 1, 2011)). Rather, the trial court was obligated to determine whether a sufficient foundation had been laid regarding a particular witness to permit that witness to render an opinion. *Id.*

¶ 25    The appellate court further explained that trial counsel's decision not to object to the treating physicians' testimony as to the frequency of trauma in sexual-assault victims was not ineffective, where both doctors had testified as to their prior emergency-room experience dealing with victims of sexual violence. *Id.* ¶¶ 69-70. The appellate court held that, because the postconviction petition failed to state "the gist" of a constitutional claim, any error related to the motion to dismiss was harmless. *Id.* ¶ 73. For the same reasons, the circuit court did not err in granting appointed postconviction counsel's motion to withdraw. *Id.* ¶¶ 68, 73.

¶ 26    We subsequently granted petitioner leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020). In addition, following oral argument, we granted petitioner leave to cite additional authority.

¶ 27                              II. ANALYSIS

¶ 28    The primary question presented for our review is whether the circuit court committed reversible error by granting the State's motion to dismiss petitioner's postconviction petition. Our review of a circuit court's dismissal of a postconviction petition at the second stage is *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29; *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Also, the determination of whether a procedure satisfies due process is a question of law, which we review *de novo*. *People v. Stoecker*, 2020 IL 124807, ¶ 17 (citing *People*

*v. Cardona*, 2013 IL 114076, ¶ 15); *People v. Hall*, 198 Ill. 2d 173, 177 (2001). Finally, the legal question of whether a procedural error is subject to harmless error review is similarly subject to *de novo* review. See *Stoecker*, 2020 IL 124807, ¶¶ 17, 23; *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 29    Petitioner argues that the circuit court's dismissal of his petition deprived him of procedural due process in granting the State's motion without sufficient notice and an opportunity to respond. He also contends that the circuit court's decision to conduct a hearing on the merits of his petition constituted a procedural due process violation because the matter had been set for "status" and none of the parties had been given notice that the State's dispositive motion would be addressed at the hearing.

¶ 30    The State responds that the circuit court acted properly in dismissing the petition because petitioner had adequate opportunity to oppose the motion to dismiss. Alternatively, the State argues that any error in the circuit court's disposition was harmless because the claims asserted in the postconviction petition lacked merit.

¶ 31                    A. Postconviction Proceedings

¶ 32    The Act provides a method by which persons under criminal sentence can assert that their convictions were the result of a substantial denial of their federal or state constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8. At the first stage of postconviction proceedings, the circuit court must independently review the postconviction petition and shall dismiss it if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not summarily dismissed at the first stage, it advances to the second stage of postconviction proceedings.

¶ 33    At the second stage, counsel may be appointed to assist an indigent defendant. *Tate*, 2012 IL 112214, ¶ 10. Postconviction counsel must consult with the defendant to ascertain his contentions of deprivation of constitutional rights, examine the record of the proceedings and the trial, and make any amendments to the *pro se* petition that are necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); see also *People v. Suarez*, 224

Ill. 2d 37, 42 (2007); *People v. Greer*, 212 Ill. 2d 192, 204-05 (2004). If, in the course of fulfilling these responsibilities, postconviction counsel discovers something that would ethically prevent him or her from presenting the petitioner's claims, counsel may move to withdraw. *People v. Kuehner*, 2015 IL 117695, ¶ 21. In that circumstance, appointed counsel must demonstrate why each of the petitioner's *pro se* claims lacks merit. *Id.* A motion to withdraw that is filed after a judicial determination that the *pro se* petition is not frivolous or patently without merit is "tantamount to a motion to reconsider." *Id.*

¶ 34    Also, at the second stage, the State may file a motion to dismiss or an answer to the petition. *People v. Domagala*, 2013 IL 113688, ¶ 33. In deciding a motion to dismiss, the circuit court must determine whether the petition and accompanying documentation make a substantial showing of a constitutional violation. *People v. Johnson*, 2018 IL 122227, ¶ 15. If the petition makes the requisite showing, it is advanced for a third-stage evidentiary hearing. *Id.* If not, dismissal is proper. *Id.*

¶ 35                          B. Procedural Due Process

¶ 36    The right to procedural due process is guaranteed by the federal and state constitutions. U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. "The fundamental requirements of due process are notice of the proceeding and an opportunity to present any objections." *Cardona*, 2013 IL 114076, ¶ 15. Therefore, this right guarantees " 'the opportunity to be heard at a meaningful time and in a meaningful manner.' " *Stoecker*, 2020 IL 124807, ¶ 17 (quoting *In re D.W.*, 214 Ill. 2d 289, 316 (2005)). "Illinois courts have recognized that basic notions of fairness dictate that a petitioner be afforded notice of, and a meaningful opportunity to respond to, any motion or responsive pleading by the State." *Id.* ¶ 20 (collecting cases). However, because due process is a flexible concept, "not all circumstances call for the same type of procedure." *Id.* (citing *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009)). A petitioner in postconviction proceedings has a right to procedural due process, and the protection of that right is of "critical importance." *People v. Kitchen*, 189 Ill. 2d 424, 434-35 (1999).

¶ 37                    C. Violation of Petitioner's Right to
                                Procedural Due Process

¶ 38        Petitioner argues that his postconviction petition was dismissed in violation of
his procedural due process rights to notice and an opportunity to be heard. We
agree.

¶ 39        In this case, the circuit court docketed the case for a "status" hearing on May 9,
2018, but when the case was called, the circuit court proceeded to address both the
State's motion to dismiss and postconviction counsel's motion to withdraw. This
court has long held that a circuit court's discretion in resolving a postconviction
petition does not permit the court to " 'convert a status call to a hearing on the
merits without notice to the parties.' " *Id.* at 434 (quoting *People v. Bounds*, 182
Ill. 2d 1, 5 (1998)). Such a procedure deprived both petitioner and his counsel of
notice that the motion to dismiss would be addressed during the hearing and
violated petitioner's procedural right to due process. *Id.* at 435; *Bounds*, 182 Ill. 2d
at 5; see also *Stoecker*, 2020 IL 124807, ¶ 22.

¶ 40        Moreover, although petitioner participated in the hearing by telephone, he had
not been served with the State's motion to dismiss and had no opportunity to
respond directly to that motion. As the appellate court noted, based on the manner
in which the circuit court conducted the hearing, the only party to address the
motion to dismiss was the State. Thereafter, the circuit court heard argument from
petitioner and postconviction counsel on the motion to withdraw. The court then
took the matter under advisement and later granted both motions. This procedure
effectively deprived petitioner of an opportunity to respond to the State's motion to
dismiss. Because he was still represented by counsel, petitioner had no right to
counter the State's argument directly. See *People v. Triplett*, 2022 IL App (3d)
200017, ¶ 16; *People v. Williams*, 2021 IL App (3d) 190082, ¶ 22; *People v. Bell*,
2018 IL App (4th) 151016, ¶ 28. And because his counsel's request to withdraw
essentially conceded that dismissal was proper, petitioner was deprived of a
meaningful opportunity to be heard on the State's dispositive motion. Given the
lack of notice that either motion would be addressed at the "status" hearing and the
lack of a meaningful opportunity to argue against the State's motion, petitioner was
denied the right to procedural due process.

¶ 41 In reaching this conclusion, we note the State's argument that petitioner suffered no procedural due process violation because he was permitted to oppose the merits-based motion to withdraw and because the circuit court's decision to grant that motion necessitated dismissal of his petition. The State's argument assumes that (1) the motion to withdraw and the motion to dismiss were premised on the same grounds, (2) petitioner was provided sufficient notice of the hearing on the motion to withdraw and had a meaningful opportunity to argue against that motion, and (3) the circuit court addressed and granted the motion to withdraw before considering the State's dispositive motion to dismiss. But that is not what happened here. Accordingly, we reject the State's argument in this case and leave for another day resolution of whether the procedure described above would satisfy the requirements of procedural due process at second-stage postconviction proceedings.

¶ 42                          D. Harmless Error Analysis Applies

¶ 43 The determination that petitioner's right to procedural due process was violated does not conclude our analysis because the State has argued that the error was harmless. Petitioner contends that the violation is not subject to harmless error review because it affected the integrity of the postconviction proceedings. We reject petitioner's contention and hold that harmless error analysis applies in this case.

¶ 44 As we observed in *Stoecker*, "[t]his court has adhered to a strong presumption that most errors of constitutional dimension are subject to harmless error analysis." *Stoecker*, 2020 IL 124807, ¶ 23 (citing *People v. Averett*, 237 Ill. 2d 1, 13 (2010), and *People v. Lofton*, 194 Ill. 2d 40, 61 (2000)). Application of harmless error analysis is predicated on the idea that an individual's interest in an error-free proceeding must be balanced against society's interests in finality and judicial economy. *Id.* In light of the need to balance those competing interests, we have held that only a structural error requires automatic reversal. *Id.* An error is structural if it constitutes a systemic error that erodes the integrity of the judicial process and undermines the fairness of the proceedings. *Id.*; see also *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009). In addition, we have abided by the principle that an error will be deemed structural when it results in " 'consequences that are necessarily unquantifiable and indeterminate.' " *Stoecker*, 2020 IL 124807, ¶ 23 (quoting

- 11 -

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006)); see also *Averett*, 237 Ill. 2d at 14.

¶ 45     In *Stoecker*, we held that a lack of notice and the denial of a reasonable opportunity to respond to a dispositive motion in a collateral civil proceeding under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) did not fall within the "narrow class of automatically reversible errors" recognized by the United States Supreme Court and this court. *Stoecker*, 2020 IL 124807, ¶ 25. We determined that, despite the seriousness of the error, it did not necessarily render the section 2-1401 proceedings automatically unfair or unreliable. *Id.* And we concluded that the impact of the procedural error at issue could not be characterized as one that is necessarily unquantifiable and indeterminate but was, instead, one that could be quantified. *Id.* Accordingly, we held that the error was amenable to harmless error review and that each case must be judged on its own facts. *Id.*

¶ 46     Here, although petitioner has sought collateral relief under a different statutory framework—postconviction proceedings under the Act as opposed to a claim for relief from judgment under section 2-1401—both types of proceedings provide an avenue for seeking collateral relief from a judgment entered in a criminal case. See *id.* ¶ 18; *Johnson*, 2018 IL 122227, ¶ 14. And we find nothing in the terms or underlying purpose of the Act that would preclude application of harmless error review. In addition, the procedural due process error asserted by petitioner here is virtually identical to that addressed in *Stoecker*. And the fact that the Act provides a mechanism for asserting claims of constitutional dimension does not necessarily preclude harmless error review. See *Stoecker*, 2020 IL 124807, ¶ 23. Rather, courts must look to whether a procedural error in a postconviction proceeding is "unquantifiable and indeterminate" such that it rendered the proceeding "automatically unfair or unreliable." *Id.* ¶ 25. We perceive no sound reason to depart from the analysis and conclusion articulated in *Stoecker*. Accordingly, where it is possible to determine that the petitioner was not harmed by the alleged constitutional deprivation and that further proceedings would be futile, harmless error analysis applies to the second-stage dismissal of a postconviction petition.

¶ 47     Petitioner disagrees and argues that this court's precedent precludes that result. Specifically, petitioner relies on our decisions in *Kitchen* and *Bounds*. However,

those cases do not stand for the proposition that harmless error analysis can never be applied to second-stage postconviction proceedings. While both *Kitchen* and *Bounds* reversed the second-stage dismissals of the postconviction petitions at issue, neither case mentioned harmless error. Thus, it does not appear that the applicability of harmless error analysis was considered and rejected, and neither case provides any guidance as to why harmless error analysis would be inappropriate in reviewing a second-stage dismissal. Consequently, the decisions in *Kitchen* and *Bounds* do not circumscribe our decision of whether harmless error analysis may be applied here.

¶ 48    Petitioner also relies on *Suarez*, 224 Ill. 2d at 46-52, which held that harmless error analysis does not apply in cases where appointed counsel has failed to comply with the mandates of Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). Although *Suarez* specifically rejected the application of harmless error analysis, it does not control the result in this case because it is both legally and factually distinguishable.

¶ 49    In *Suarez*, the court acknowledged and confirmed the long-standing precedent that a failure to comply with Rule 651(c) constitutes inadequate representation by counsel. *Suarez*, 224 Ill. 2d at 47-48. In addition, the court noted its prior reasoning that " 'it is improper to affirm the dismissal of a post-conviction petition when [the] court finds that post-conviction counsel's performance was so deficient that it amounts to virtually no representation at all.' " *Id.* at 48 (quoting *People v. Turner*, 187 Ill. 2d 406, 415-16 (1999)). In refusing to overrule that precedent, the court recognized that its Rule 651(c) analysis was animated by the principle that "where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized." *Id.* at 51.

¶ 50    The nature of the violation at issue in *Suarez* is fundamentally different from the one presented in this case. A conclusion that postconviction counsel's performance was "so deficient that it amounts to virtually no representation at all" raises fundamental questions as to whether petitioner's claims were properly presented and jeopardizes the fairness and reliability of the proceedings. In addition, this court has recognized that we cannot presume that the circuit court would have dismissed a postconviction petition if counsel had adequately satisfied

- 13 -

the duties mandated by Rule 651(c). *Id.* at 48 (citing *People v. Johnson*, 154 Ill. 2d 227, 246 (1993)). Thus, the reasoning underlying the decision in *Suarez* is premised on the recognition that the failure to comply with Rule 651(c) could result in consequences that are difficult to ascertain. That is not the case here. As was similarly true in *Stoecker*, the procedural due process violation at issue is not "necessarily unquantifiable and indeterminate" and "does not necessarily render the proceedings automatically unfair or unreliable." See *Stoecker*, 2020 IL 124807, ¶ 25. Lastly, we find petitioner's policy-based reasons unpersuasive and, therefore, decline to extend the reasoning applied in *Suarez* to procedural due process violations in second-stage postconviction proceedings. Where the impact of the error is quantifiable and found to be harmless, automatic reversal and remand would serve no useful purpose and would merely delay the dismissal of the postconviction petition. See *id.* ¶¶ 26, 33.

¶ 51                              E. The Error Was Harmless

¶ 52        Petitioner contends that, even if harmless error analysis applies, dismissal of his postconviction petition was erroneous because it asserted potentially meritorious claims that (1) his trial counsel rendered ineffective assistance by failing to object to improper expert testimony by Dr. Adams and Dr. Sliwa regarding the frequency of vaginal trauma in victims of sexual assault and (2) his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. We, therefore, consider whether petitioner made a substantial showing as to either claim.

¶ 53        A claim asserting the ineffective assistance of counsel is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *People v. Moore*, 2020 IL 124538, ¶ 28. To prevail on such a claim, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Id.* ¶ 29 (citing *Domagala*, 2013 IL 113688, ¶ 36, and *Strickland*, 466 U.S. at 687). In seeking to establish ineffective assistance, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome of

- 14 -

the proceeding." (Internal quotation marks omitted.) *Id.* In order to prevail on a claim of ineffective assistance of counsel, both prongs of the *Strickland* standard must be satisfied. *Id.*

¶ 54    Petitioner argues that the performance of his trial counsel was deficient because his attorney failed to object to the admissibility of the treating physicians' expert testimony regarding the likelihood that physical evidence of trauma would be apparent during a pelvic exam of a sexual assault victim. With regard to this issue, petitioner claims that the appellate court erred in holding that he could not establish his counsel's ineffectiveness because the decision not to object to the doctors' opinion testimony was a matter of trial strategy. We need not decide whether the appellate court erred in basing its decision on trial strategy because, even if that were not the case, petitioner's claim lacks merit.

¶ 55    It is established that a witness is " 'permitted to testify as an expert if his experience and qualifications afford him knowledge which is not common to lay persons and where such testimony will aid the trier of fact in reaching its conclusion.' " *People v. King*, 2020 IL 123926, ¶ 35 (quoting *People v. Enis*, 139 Ill. 2d 264, 288 (1990)). This standard has been codified in Illinois Rule of Evidence 702 (eff. Jan. 1, 2011), which provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

¶ 56    Illinois law does not impose any explicit requirements as to the level or extent of experience, education, scientific study, or training that is required to qualify a witness to offer expert testimony on a subject. *People v. Lovejoy*, 235 Ill. 2d 97, 125 (2009). In determining whether such testimony is proper, the relevant question is whether the witness has knowledge and experience beyond the average citizen that would assist the jury in evaluating the evidence. *Thompson v. Gordon*, 221 Ill. 2d 414, 428-29 (2006).

¶ 57    Petitioner has not challenged the admission of the treating physicians' testimony regarding their respective examinations of A.H. and K.S. or the evidence that neither doctor found any indication of sexual trauma. He contends, however, that, because the doctors were not practicing or board-certified gynecologists, they

were not qualified to opine as to whether the absence of physical evidence of trauma was inconsistent with the victims' allegations of sexual assault. He also contends that the doctors were not qualified to testify that most examinations of sexual assault victims do not reveal physical evidence of trauma. We disagree.

¶ 58    Dr. Adams and Dr. Sliwa testified regarding their medical education, clinical experience, and familiarity with the scientific literature with respect to the examination of sexual assault victims. Both doctors were board-certified in emergency medicine and had examined numerous sexual assault victims while practicing in that field. In addition, Dr. Sliwa testified that, as a physician, he received training in gynecology. Although neither doctor was a gynecologist or trained on the use of a colposcope, those facts did not render their opinions inadmissible. See *People v. Pasch*, 152 Ill. 2d 133, 179 (1992). Instead, any vulnerability relating to an expert witness's qualifications, experience, or basis for opinion may be explored on cross-examination and will affect the weight of that testimony rather than its admissibility. *Id.*; see also *People v. Williams*, 238 Ill. 2d 125, 140-41 (2010).

¶ 59    For similar reasons, we reject petitioner's assertion that his trial counsel was ineffective in failing to object to the doctors' opinion testimony on the ground that it was based on speculation. Both doctors, who were board-certified in emergency medicine, explained that their opinions were based on personal experience working in that field and also on the scientific literature pertaining to the examination of sexual assault victims. Moreover, both doctors testified that their experience included providing treatment to patients who sought treatment for sexual assault. Because petitioner was able to cross-examine Dr. Adams and Dr. Sliwa regarding the underlying bases for their opinions, any weakness in the foundations for those opinions would go only to the weight of that evidence and not its admissibility. See *Pasch*, 152 Ill. 2d at 179. As a consequence, petitioner's reliance on *People v. Cloutier*, 156 Ill. 2d 483 (1993), is misplaced. In *Cloutier*, this court held that the trial court properly excluded an expert witness's testimony regarding the frequency of injury as a result of sexual assault on the basis that it was speculative, where the witness "specifically disclaimed any recall of the number of forced sex victims who had not suffered injury *** as a result of such conduct." *Id.* at 502. Thus, this court's decision was predicated in part on the fact that the challenged testimony by the expert witness was speculative and uncertain because he had no recollection of the

underlying data on which he would have based his opinion as to frequency of injury in such cases. See *id.* Because neither Dr. Adams nor Dr. Sliwa testified that they could not recall the underlying basis for their opinions, *Cloutier* is distinguishable on its facts and does not control here.

¶ 60     A defendant's trial attorney cannot be considered ineffective for failing to raise or pursue what would have been a meritless motion or objection. See *People v. Rogers*, 2021 IL 126163, ¶ 32. In light of the above, we conclude that petitioner's trial counsel did not render ineffective assistance based on the failure to challenge the treating physicians' expert testimony on the likelihood of discovering physical evidence of trauma when examining a sexual assault victim.

¶ 61     Petitioner further contends that his trial counsel should have objected to the circuit court's failure to certify the treating physicians as experts, which rendered their expert testimony inadmissible. We disagree.

¶ 62     As the appellate court pointed out, Illinois Rule of Evidence 702 does not require that a circuit court "certify" an expert before that witness can offer opinion testimony. 2021 IL App (4th) 180751, ¶ 46 (citing Ill. R. Evid. 702 (eff. Jan. 1, 2011)). In support of his contention, petitioner relies on *O'Brien v. Meyer*, 196 Ill. App. 3d 457, 461 (1989). That case provides no guidance here because it did not address the issue posited by petitioner. Instead, *O'Brien* considered the extent to which the educational and licensure background of an expert may be challenged on cross-examination. *Id.* at 461-63. *O'Brien* did not hold that a circuit court must qualify or certify a witness as an expert where the witness's qualifications have not been challenged by the opposing party.

¶ 63     Because a defendant must satisfy both prongs of *Strickland* and we have concluded that petitioner did not make a substantial showing of deficient performance, we need not consider whether he had shown prejudice as a result of his trial counsel's representation.

¶ 64     Our determination that petitioner did not show that his trial counsel was deficient also defeats his claim that appellate counsel was ineffective. Appellate counsel is not obligated to brief and argue every conceivable issue on appeal, and a defendant cannot claim prejudice based on appellate counsel's failure to raise an issue that is not meritorious. *People v. Haynes*, 192 Ill. 2d 437, 476 (2000). Here,

given that petitioner's claim of ineffective assistance by trial counsel lacks merit, he could not make a substantial showing of prejudice based on his appellate counsel's representation. See *id.* at 479-80.

¶ 65                                    III. CONCLUSION

¶ 66    In sum, we hold that petitioner's right to procedural due process was violated where the circuit court dismissed his postconviction petition without affording him adequate notice and a meaningful opportunity to be heard. However, because the claims asserted in the petition lack merit, he did not present a substantial showing of a constitutional deprivation at trial or on direct appeal. Accordingly, the procedural due process error in the circuit court's second-stage dismissal of his petition was harmless, and we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 67    Judgments affirmed.