**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240825-U

NO. 4-24-0825

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
July 1, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| JOHN D. STUFFLEBEAM, | ) | No. 08CF97 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the second-stage dismissal of defendant's second amended postconviction petition because defendant failed to make a substantial showing trial counsel provided ineffective assistance during plea negotiations.

¶ 2    A jury convicted defendant, John D. Stufflebeam, of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2006)). He was subsequently sentenced to two consecutive terms of 14 years' imprisonment, for an aggregate term of 28 years. Thereafter, defendant petitioned *pro se* for postconviction relief, the trial court summarily dismissed the petition, defendant appealed, and the Appellate Court, Third District, reversed and remanded. On remand, postconviction counsel was appointed and filed a second amended postconviction petition, alleging trial counsel's erroneous advice about defendant's statutory right to a speedy trial resulted in defendant rejecting the State's plea offers and proceeding with a jury trial. The State moved to dismiss, and the trial court granted the State's motion. Defendant

appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          Defendant was arrested on March 6, 2008, for sexually assaulting M.B., a four-year-old boy. Soon thereafter, Kirk Bode was appointed to represent defendant. Defendant remained in jail and was brought to trial on October 14, 2008.

¶ 5          Between March 6, 2008, and October 14, 2008, several pretrial motions were filed by both parties. On May 13, 2008, while several of the State's pretrial motions were pending, Bode moved for, among other things, a psychiatric examination of defendant, claiming there was a *bona fide* doubt about defendant's fitness to stand trial and sanity at the time the crimes were committed. Bode believed this motion did not toll the time the State had to bring defendant to trial. Thus, on July 1, 2008, Bode moved to dismiss the indictment and release defendant from custody, claiming defendant's statutory speedy trial right was violated, as defendant had been in continuous custody for 120 days. See 725 ILCS 5/103-5 (West 2008).

¶ 6          On September 3, 2008, a hearing on Bode's motion to dismiss was held. Bode asserted at the hearing that the "primary issue" was whether his motion for a psychiatric exam tolled the 120 days the State had to bring defendant to trial. The trial court denied the motion to dismiss.

¶ 7          The case proceeded to trial, and defendant was convicted and sentenced. He appealed, and his convictions and sentences were affirmed (*People v. Stufflebeam*, No. 3-08-1038 (2011) (unpublished order under Illinois Supreme Court Rule 23)).

¶ 8          On March 5, 2012, defendant filed a *pro se* petition for postconviction relief. In his petition, he alleged, among other things:

                   "After the hearing on the psychiatric examination, [Bode] told Defendant

and his family, that the judge would probably grant the motion for psychiatric examination because that would toll the clock on the speedy trial. If he denied it, the clock would continue to run, and he would violate speedy trial. *** This resulted in the Defendant foregoing a favorable plea agreement and any further negotiations, so that he could exercise his right to appeal [citation].

* * *

*** As this issue has relied on matters outside the record, Appellate Counsel could not have argued it on Direct Appeal."

¶ 9 Attached to the petition were affidavits prepared by defendant and his father and brother. In his affidavit, defendant attested, "The [S]tate had agreed to a plea bargain of 14 years at 85%, but because *I believed* my speedy trial right had been violated, and I would win on appeal, *I was unwilling* to negotiate." (Emphases added.)

¶ 10 Defendant's father attested that, after the June 30, 2008, hearing, "Bode told me that [h]e was sure the judge would grant the motion for psychiatric examination. *** Bode went on to explain that if a psychiatric examination were ordered by the judge[,] then the clock on the speedy trial would be extended and more time would be afforded."

¶ 11 Similarly, defendant's brother attested:

"On [June 30, 2008,] after the hearing, *** Bode met with us to explain what happened in the hearing. He said that he asked for a psychological evaluation [*sic*] for [defendant] and that the judge would most likely approve it to 'stop the clock.' Otherwise[,] they would violate[defendant's] right to a speedy trial."

¶ 12 The trial court summarily dismissed defendant's petition, and he appealed.

¶ 13         The Appellate Court, Third District, reversed and remanded for proceedings under stage two of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). See *People v. Stufflebeam*, 2014 IL App (3d) 120317-U, ¶ 27. In so doing, the court observed, under *People v. Curry*, 178 Ill. 2d 509, 530 (1997), a defendant who claims his trial counsel was ineffective in advising him to reject a plea offer must establish (1) counsel's performance fell below an objective standard of reasonableness during plea bargaining (deficient performance) and (2) the defendant would have accepted the plea offer but for counsel's erroneous advice (prejudice prong). *Stufflebeam*, 2014 IL App (3d) 120317-U, ¶ 21. The court then noted this law was modified on March 21, 2012, 16 days after defendant filed his petition, when the United States Supreme Court decided *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012). Under these cases, a defendant who claims his attorney was ineffective for advising him to reject a plea offer must establish, pursuant to the prejudice prong, (1) he would have accepted the plea offer if his attorney had not provided erroneous advice; (2) the plea would have been presented to the trial court, *i.e.*, the defendant would have accepted the plea offer and the State would not have withdrawn the offer because of intervening circumstances; (3) the trial court would have accepted the terms of the plea offer; and (4) the conviction, sentence, or both would have been less severe under the plea offer's terms than under the judgment and sentence that were in fact imposed (*Frye*, 566 U.S. at 147; *Lafler*, 566 U.S. at 164). *Stufflebeam*, 2014 IL App (3d) 120317-U, ¶ 22. The appellate court found defendant's ineffective assistance claim "arguably would not have been sufficient *** after March 21, 2012." *Id.* ¶ 24. However, defendant's petition was filed before March 21, 2012. *Id.* Thus, the court found *Curry*, not *Lafler* and *Frye*, controlled. *Id.* The court determined, "Under *Curry*, defendant adequately alleged facts showing that, arguably, his trial counsel [was deficient] and that he arguably suffered prejudice

- 4 -

because, absent counsel's erroneous information, he would have accepted the plea bargain." *Id.* The court continued, "[I]nasmuch as *Curry* framed defendant's pleading requirement at the time [his postconviction petition was] filed, it would be fundamentally unfair at this stage (1st stage) to bar his claims for failure to comply with the later-adopted standard (*Lafler/Frye*)." *Id.* ¶ 26. Nonetheless, the appellate court held, "[T]he standard set forth in *Lafler* and *Frye* [is] applicable for all proceedings moving forward." *Id.* ¶ 27.

¶ 14 On remand, counsel was appointed to represent defendant, and postconviction counsel filed an amended and a second amended postconviction petition. In the second amended petition, which was filed on September 25, 2023, counsel raised several issues, including an allegation that Bode's misunderstanding of defendant's statutory speedy trial right resulted in defendant rejecting the State's plea offers. On that issue, postconviction counsel asserted the State extended a plea offer to defendant on September 10, 2008, which provided two options. Under the first option, defendant would plead guilty to count I, and count II would be dismissed. He would receive a 25-year sentence, which he would serve at 85%, and be subject to a term of mandatory supervised release of between three years and life. Under the second option, defendant would plead guilty to count I, and the trial court would sentence defendant to a "cap" of 40 years. Postconviction counsel also stated that, between September 30 and October 10, 2008, the State extended a revised plea offer to defendant. Under the revised offer, defendant would receive a sentence of 14 years' imprisonment, which he would serve at 85%. (The record does not indicate on what count(s) the sentence would be imposed.) Postconviction counsel asserted defendant rejected all the offers "because *he* believed his right to a Speedy Trial *** had been violated." (Emphasis added.)

¶ 15 Postconviction counsel then alleged:

"As a result of [Bode's] objectively erroneous advice associated with the filing of a premature Motion to Dismiss for Speedy Trial violation on July 8, 2008 (when no violation had occurred)[,] [defendant] rejected the State's plea offers; he instead opted for a jury trial resulting in a finding and judgment of guilty and a sentence of two consecutive [14] year imprisonment terms; that sentence being twice the imprisonment time he would have served had he accepted the State's last offer of 14 years imprisonment and served 85% of that sentence."

¶ 16 Postconviction counsel alleged, "[D]efendant would have accepted the 14-year offer had he been properly advised of the Speedy Trial right and there were no intervening circumstances to indicate the [State] would have withdrawn the offer." Moreover, postconviction counsel alleged the trial court would have accepted the State's revised offer, citing the affidavits of Kevin F. Sullivan and Gary L. Morris, two attorneys who had practiced before the court. Attached to the petition were, among other things, (1) the affidavits of defendant and his father and brother, which were submitted with the initial petition; (2) defendant's supplemental affidavit; (3) the State's September 10, 2008, written plea offer; and (4) the affidavits of Sullivan and Morris. Defendant attested in his supplemental affidavit that, on June 30, 2008, Bode said, " '[T]he judge will probably grant the Motion for Psychiatric Examination because that would toll the clock on the speedy trial. If he denied it, the clock would continue to run and he would violate speedy trial and have to let you go.' " Defendant continued, when the motion for a psychiatric examination was denied, "I then believed my speedy trial rights had been violated," a position defendant's brother agreed with after talking with Bode. Defendant attested, "[S]ome time in September or October[ ], *** Bode informed me that the State was wanting to know what it would take for me to plead out." Defendant stated he wrote a letter to Bode advising him he

would accept " 'not one day more than 14 years at 50%.' " Defendant attested Bode informed him two weeks before trial that the State was offering him 14 years, to be served at 85%. Defendant told Bode he would not accept that offer. Defendant attested Bode asked him why, and he said, "I was going to appeal my case and win because of the speedy trial violation." Bode responded, " '[A]n appeal is *always* a long shot at best.' " (Emphasis added.) Defendant attested that, despite Bode's opinion about the success of an appeal, he "still believed [he] would win on appeal because [Bode's] statement seemed to be a more generalized blanket statement rather than going to the strength of [his] case." Defendant attested, "If I had known that speedy trial was not violated, then I would have accepted the 14 years at 85% since it was close to the 14 years at 50% that I would have accepted even though *I thought* I would win on appeal." (Emphasis added.)

¶ 17      The State's September 10, 2008, written plea offer confirmed what was alleged in the second amended postconviction petition. The affidavits of Sullivan and Morris confirmed that, based on their professional experience with the trial court, they believed the court would have accepted a plea offer of 14 years.

¶ 18      The State filed a motion to dismiss defendant's second amended postconviction petition. The State asserted Bode was not deficient, noting "[he] never told Defendant his case would be dismissed." The State claimed, "Defendant merely alleges that [Bode] told him that if his speedy trial rights had been violated, 'the Defendant would have to be released.' " The State noted, "At the time [defendant] rejected the multiple plea offers from the State, the trial court had already rejected [the] motion regarding [defendant's] speedy trial right," and "[d]efendant does not allege that [Bode] told him he should reject any pleas based on some possible success on appeal."

¶ 19　　　　　The trial court summarily dismissed the second amended petition. The court found, among other things, "[t]he record, including defendant's own words[,] defeat this claim" that Bode's erroneous advice resulted in him rejecting the State's plea offers. The court observed Bode never told defendant he was entitled to the dismissal of the case or should reject the plea offers. Rather, defendant told Bode he was rejecting the plea offers because he believed he would win on appeal. In doing so, defendant ignored Bode's advice that success on appeal was a "long shot."

¶ 20　　　　　This appeal followed.

¶ 21　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　　　　　At issue on appeal is whether the second-stage dismissal of defendant's second amended postconviction petition was proper. "The Act provides a method by which persons under criminal sentence can assert that their convictions were the result of a substantial denial of their federal or state constitutional rights." *People v. Pingelton*, 2022 IL 127680, ¶ 32. "In cases not involving the death penalty, the *** Act sets forth three stages of proceedings." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 13. This appeal concerns a second-stage dismissal.

¶ 23　　　　　At the second stage, a defendant may elect to have counsel appointed to represent him if he is indigent. *Pingelton*, 2022 IL 127680, ¶ 33. "Postconviction counsel must consult with the defendant to ascertain his contentions of deprivation of constitutional rights, examine the record of the proceedings and the trial, and make any amendments to the *pro se* petition that are necessary to adequately present the defendant's contentions." *Id.* "Also, at the second stage, the State may file a motion to dismiss or an answer to the petition." *Id.* ¶ 34.

¶ 24　　　　　In ruling on the defendant's petition, the trial court must accept the defendant's allegations as true unless the record affirmatively rebuts them (*People v. Domagala*, 2013 IL

113688, ¶ 35) and the court cannot engage in any fact finding or credibility determinations (see *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). "[T]he circuit court must determine whether the petition and accompanying documentation make a substantial showing of a constitutional violation." *Pingelton*, 2022 IL 127680, ¶ 34. "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle [the defendant] to relief." (Emphasis omitted.) *Domagala*, 2013 IL 113688, ¶ 35. "If the petition makes the requisite showing, it is advanced [to the third stage] for a[n] evidentiary hearing." *Pingelton*, 2022 IL 127680, ¶ 34. If the petition fails to make the requisite showing, it is dismissed. *Id.* We review *de novo* a dismissal at the second stage. See *id.* ¶ 28.

¶ 25        Defendant claims he made a substantial showing Bode was ineffective in that he was prejudiced by Bode's erroneous advice. More specifically, he alleges that, but for Bode's erroneous representations, he would have accepted a favorable plea offer. The State, acknowledging that it must accept as true defendant's claim that Bode told him his speedy trial right would be violated if the trial court denied his motion for a psychiatric examination, argues defendant has failed to make a showing that counsel's advice prejudiced him. We agree with the State.

¶ 26        Every defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. This right applies to counsel appointed during the plea bargaining process. *People v. Hale*, 2013 IL 113140, ¶ 15.

¶ 27        Claims of ineffective assistance are governed by the standard set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland*). "To establish a claim of ineffective assistance of counsel in the plea process, the defendant must show counsel's performance was deficient and that the deficient performance resulted in prejudice." *People v. Hughes*, 2012 IL 112817, ¶ 44. Prejudice in the rejection of a plea offer requires that the defendant first establish there is a reasonable probability "he would have accepted the State's plea offer had counsel's performance not been deficient." *Hale*, 2013 IL 113140, ¶ 21. "Absent [the] defendant's demonstration of this factor, prejudice cannot be proven and there is no need to address the additional factors set forth in *Frye* and [*Lafler*]." *Id.*

¶ 28        In this context, " '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* ¶ 18 (quoting *Strickland*, 466 U.S. at 694). "This showing of prejudice must encompass more than a defendant's own subjective, self-serving testimony." (Internal quotation marks omitted.) *Id.* "Rather, there must be independent, objective confirmation that [the] defendant's rejection of the proffered plea was based upon counsel's erroneous advice, and not on other considerations." (Internal quotation marks omitted.) *Id.*

¶ 29        Here, we determine defendant has failed to establish the initial threshold of prejudice in rejecting a favorable plea offer. More specifically, we determine defendant's misconceptions, not Bode's, caused defendant to reject the State's offers and proceed with a jury trial, and, thus, there is not a reasonable probability that, but for Bode's erroneous advice, defendant would have accepted any of the State's offers. Defendant opted to reject the State's plea offers because he believed he could successfully assert on appeal that his statutory right to a speedy trial was violated. Defendant's belief continued *after* (1) the trial court denied Bode's motion to dismiss the case for a statutory speedy trial violation and (2) the State extended to

- 10 -

defendant three plea offers, the last of which was close to what defendant hoped to receive. Defendant never alleged the State tendered to him a plea offer he was willing to accept. (The State's last and best offer would have required defendant to serve an approximate 12-year sentence, while defendant hoped to receive an offer whereby he would serve a 7-year sentence.) Defendant also never alleged Bode told him to reject the plea offers because appealing the statutory speedy trial issue would be successful. Rather, Bode advised defendant that an appeal is " '*always* a long shot at best.' " (Emphasis added.) Thereafter, defendant did not seek to revoke his rejections and accept any of the State's offers. Instead, he insisted on going to trial, "still believ[ing he] would win on appeal." Given this evidence, we cannot conclude defendant has made a substantial showing that but for Bode's erroneous advice, there is a reasonable probability that he would have accepted any one of the State's plea offers. Accordingly, we cannot conclude defendant was prejudiced, need not address the other prejudice factors delineated in *Lafler* (*id.* ¶ 21), and find Bode was not ineffective (*People v. Donlow*, 2020 IL App (4th) 170374, ¶ 80 (" 'A court may resolve a claim of ineffective assistance of counsel by reaching only the prejudice prong, as a lack of prejudice renders irrelevant the issue of counsel's alleged deficient performance.' " (quoting *People v. Hall*, 194 Ill. 2d 305, 337-38 (2000))).

¶ 30    Defendant argues "the uncontradicted allegations of [his] affidavit substantially show that he rejected the State's offer solely because of [Bode's] advice." Defendant suggests, "When the defendant's allegations are treated as being true, the allegations sufficiently pleaded [show] that defendant would have accepted the State's plea offer had [Bode] not told him that prosecution was barred because his speedy trial rights had been violated." The record belies defendant's claims. As indicated above, defendant persisted in rejecting the State's plea offers because, despite the trial court's denial of Bode's motion to dismiss and Bode's advice that

success on appeal would be unlikely, defendant was unhappy with the terms of the State's offers.

¶ 31   Enlightening in this case is *Curry*, which was abrogated by *Hale* only because *Lafler* and *Frye* established additional prejudice factors in cases where the defendant rejects a plea offer. See *Hale*, 2013 IL 113140, ¶ 21. In *Curry*, 178 Ill. 2d at 515, the defendant went to trial, was convicted of residential burglary and two counts of criminal sexual assault, and was sentenced to three consecutive terms of 4 years' imprisonment, for an aggregate term of 12 years. The defendant moved to reconsider, arguing his trial counsel was ineffective because counsel, who mistakenly believed the defendant would face concurrent sentences of four years' imprisonment if he was convicted of any of the three charges, advised him to reject the State's plea offer of four and a half years. *Id.* at 516. Attached to the defendant's motion was counsel's affidavit, wherein he attested he did not inform the defendant he could receive consecutive sentences if he was convicted. *Id.* The trial court denied the motion, and the defendant appealed. *Id.*

¶ 32   On appeal to our supreme court, the defendant in *Curry* argued, among other things, he was denied the effective assistance of counsel during plea negotiations. *Id.* at 516-17. More specifically, the defendant argued that, but for counsel's erroneous advice, he would have accepted the plea offer and avoided going to trial. *Id.* at 518. After determining that counsel's performance was deficient, the court addressed whether the defendant was thereby prejudiced. *Id.* at 529. The court found that he was. *Id.* at 531. First, the court observed the defendant asserted "he would have accepted the plea offer if he had been told that consecutive sentences were mandatory." *Id.* Although this alone was insufficient, the court noted additional evidence supported and corroborated the defendant's self-serving statement. *Id.* Specifically, counsel attested, (1) during plea negotiations, he was unaware the defendant faced consecutive

sentencing; (2) he told the defendant that, based on his criminal record, he believed there was a substantial probability defendant would receive close to a four-year sentence if he was convicted of any of the offenses; and (3) "[b]*ased on this advice,* [*the defendant*] *rejected the State's plea offer*" of four and a half years' imprisonment. (Emphasis in original.) *Id.* Given this evidence, the court held, "[The] defendant's rejection of the proffered plea was based upon counsel's erroneous advice, and not, as the State suggests, upon other considerations." *Id.* at 532.

¶ 33        Here, even if Bode was deficient in believing defendant's statutory speedy trial right was violated (see *People v. Browry*, 8 Ill. App. 3d 599, 602 (1972) (suggesting a delay to ascertain a defendant's mental capacity tolls the time the State must bring the defendant to trial)), defendant was not, like the defendant in *Curry*, prejudiced by Bode's conduct. Counsel in *Curry* advised the defendant to reject the State's plea offer because counsel believed the defendant would not receive consecutive sentences. Here, unlike in *Curry*, Bode never advised defendant to reject the plea offer. Rather, defendant alone decided not to accept any of the State's plea offers because, even though Bode told him his success on appeal would "*always* [be] a long shot at best," defendant believed he would win his appeal.

¶ 34        In sum, we determine defendant has failed to make a substantial showing of prejudice necessary to support a claim that Bode provided ineffective assistance during plea negotiations. Accordingly, we affirm the second-stage dismissal of defendant's second amended postconviction petition.

¶ 35                               III. CONCLUSION

¶ 36        For the reasons stated, we affirm the trial court's judgment.

¶ 37        Affirmed.

- 13 -