2025 IL App (1st) 231561-U

No. 1-23-1561

Order filed March 17, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15 CR 13171 |
| | ) | |
| SHAWN RANDALL, | ) ) | Honorable Maria Kuriakos-Ciesil, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the summary dismissal of defendant's *pro se* postconviction petition when his claims were not arguably meritorious.

¶ 2     Defendant Shawn Randall appeals from the circuit court's summary dismissal of his *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). On appeal, defendant contends that the petition set forth the arguably meritorious claims that he was unconstitutionally arrested pursuant to an investigative alert and that his

sentence was unconstitutionally disproportionate when the trial court did not apply the juvenile sentencing factors enumerated in *Miller v. Alabama*, 567 U.S. 460 (2012). We affirm.

¶ 3    Following a jury trial, defendant was found guilty of the first degree murder of Vallan Francis and sentenced to 55 years in prison. Defendant was 19 years old at the time of the offense. The facts were extensively detailed in our order on direct appeal. See *People v. Randall*, 2022 IL App (1st) 191616-U. We relate only those facts relevant to this appeal.

¶ 4    At trial, Keisha LeFlore, who shared three children with Francis, testified that in July 2015, they lived in Chicago. Francis was a member of the "Loc City" gang. There was "[a] lot of arguing" between the Loc City gang and the "Pooh Bear" gang, but LeFlore was unaware of any violence. LeFlore identified defendant in court as "Little Shawn" or Shawn Randall. In 2015, LeFlore did not know defendant but had seen him twice around the neighborhood and viewed his Facebook page once or twice. At trial, LeFlore was unsure whether defendant belonged to the Pooh Bear gang. However, she acknowledged telling police officers in 2015 that she believed defendant belonged to the Pooh Bear gang and that the Loc City and Pooh Bear gangs were "at war."

¶ 5    On the afternoon of July 17, 2015, LeFlore, Francis, and their children were outside their building when LeFlore noticed someone pass by on a black bike. The person on the bike was an African-American man with a "dipped" braid hairstyle and wore white shorts and a blue long-sleeved shirt. LeFlore could not see the person's face because he wore a cinched hood. She denied recognizing defendant as the bike rider. The family prepared to go inside. Then, LeFlore heard four or five gunshots and ran to her children. Francis was shot, taken to a hospital, and later died from his injuries. At the hospital, LeFlore told detectives that the shooter wore a black hoody and

that she believed it was Little Shawn. Later, at a police station, she identified defendant in a photographic array.

¶ 6     At trial, LeFlore denied telling detectives that she saw Little Shawn, who belonged to a rival gang, pass by on a bike, then return with a black firearm that he fired three to four times at Francis. She further denied telling the detectives that Little Shawn wore the hood over his head, but that she saw his dreadlocks and his face. LeFlore also denied telling another detective and an assistant state's attorney (ASA) that she saw defendant shoot Francis.

¶ 7     The State presented LeFlore's videotaped statement and a transcript of her grand jury testimony in which she identified defendant as the shooter.[1]

¶ 8     Chicago police detective Rolando Rodriguez testified that LeFlore stated that she observed Little Shawn pass by on a bicycle, then return with a black firearm that he fired three to four times at Francis. Rodriguez then created a photographic array that was administered to LeFlore by another detective. LeFlore identified a photograph of defendant as the shooter. Chicago police detective Adam Katz, who administered the photographic array, testified that LeFlore identified Little Shawn as the shooter.

¶ 9     An ASA testified that LeFlore agreed to make a videotaped statement, and during that statement, she stated that Little Shawn passed by on a bike, then returned and shot at Francis about five times with a black firearm.

¶ 10     The State presented additional evidence establishing that, following the shooting, a bicycle was located in a nearby alley and that defendant's DNA was recovered from that bicycle.

---

[1] Neither is included in the record on appeal.

¶ 11    A Chicago police detective testified that he issued an investigative alert for defendant after learning that defendant was identified as the shooter.

¶ 12    The jury found defendant guilty of first degree murder. Defendant then obtained new counsel. Following argument, the trial court denied defendant's motion for a new trial.

¶ 13    At sentencing, Francis's sister stated that Francis was devoted to his family and children and that his death caused pain to the family.

¶ 14    The presentence investigation (PSI) reflected that defendant was raised by his mother and had a distant relationship with his father. Defendant had regular phone contact with his mother, who lived out of state, and described his childhood as "good." He attended school until he was shot in the leg during his senior year. Defendant was previously employed, and enjoyed rapping and spending time with friends. Prior to his arrest, defendant lived in the family home of a friend who was murdered. Defendant belonged to the Pooh Bear gang since he was 14 years old. He drank alcohol, used marijuana and ecstasy, and had prior convictions for possession of a controlled substance and theft.

¶ 15    The trial court asked whether there were any additions or corrections to the PSI report, and both parties answered in the negative.

¶ 16    Posttrial counsel argued that defendant, who was 19 years old at the time of the offense, was raised in a "fairly normal home" but currently had no contact with his family and only defendant's friends were present in court. Although defendant was not a "stellar student," he progressed to his senior year of high school and only left after being shot. Defendant subsequently had two surgeries. Counsel noted that defendant's mother moved to Maryland without defendant and that defendant's father also left the home. Thereafter, defendant was "essentially raised by

going from house to house of his friends." In 2015, the friend with whom defendant lived was murdered.

¶ 17    Posttrial counsel added that defendant was an aspiring musician and supported himself since age 16. Defendant's criminal background involved narcotics and theft rather than firearms and violence. Posttrial counsel asked the court to consider that defendant had "multiple stumbling blocks" and "never really had a chance" and to exercise compassion and mercy when imposing sentence.

¶ 18    In allocution, defendant asserted his innocence and characterized the charge as "disrespectful" as he never murdered anyone.

¶ 19    In aggravation, the State argued that Francis had been "doing nothing" when he was shot in front of his children, and that defendant made excuses rather than take responsibility. The State noted that the PSI indicated that defendant had a decent upbringing and went to a "good school." Defendant was at a "crossroads" when he was shot during his senior year of high school and chose not to complete school. The State also argued that defendant appeared in YouTube videos where he rapped about killing rival gang members and was on electronic monitoring when he committed the offense.

¶ 20    Posttrial counsel replied that the "lyrical content" of defendant's videos should not be used in aggravation. Moreover, in 2014, when defendant's life was "falling apart" due to his gunshot wound and surgeries, he was "virtually alone." Counsel noted that, even if defendant received the statutory minimum sentence, he would never marry or have children and would be released when he was 68 years old.

¶ 21    The trial court recessed to "think over" the parties' arguments. Upon recalling the case, the trial court stated that it reviewed the information in aggravation and mitigation, the PSI, the parties' arguments, the statements of defendant and Francis's sister, and defendant's criminal background. The court noted the seriousness of the offense, the need to restore defendant to useful citizenship, and the cost of incarceration. The court then described

> "the particular circumstances of [defendant's] life, which include his youth, how young he was at the time that he committed the offense that brings him before this Court today, that he was 19 at the time and himself a victim of gun violence from high school and that although he came from a home in which he received love and attention and his needs were met, that as of the time of that shooting, him being shot, that he never returned to school to complete it and that from this time in his life, roughly the age of 16 [to] present, the presence of his actual physical family appears not to be immediate, that counsel points to the fact that mother is not here physically, that [defendant has] not received calls from the mother and that the father also is not present and that counsel has not been contacted by him. There are several people present in the gallery on behalf of [defendant] in support of him and counsel referenced the tragic circumstances in [defendant's] life during which he lost a dear friend with whom he was residing as he made his way in life."

¶ 22    The court finally noted that defendant's criminal history was not "significant," although his conduct caused serious harm which would reverberate in Francis's children's lives. The court imposed an aggregate sentence of 55 years in prison.

¶ 23    We affirmed on appeal. See *Randall*, 2022 IL App (1st) 191616-U.

¶ 24   On March 29, 2023, defendant filed a *pro se* postconviction petition alleging, relevant here, that he was unconstitutionally arrested pursuant to an investigative alert, that his constitutional rights were violated when evidence obtained as a result of his warrantless arrest was used against him, and that he was denied effective assistance when trial counsel did not challenge the warrantless arrest. Defendant further alleged that trial counsel failed to file a motion to "squash [*sic*] arrest" and suppress evidence based on his arrest pursuant to an investigative alert, posttrial counsel failed to challenge trial counsel's failure to file such a motion, and appellate counsel failed to raise this issue on direct appeal.

¶ 25   Defendant also alleged that his 55-year sentence constituted a *de facto* life term, was excessive, violated the proportionate penalties clause, and that the trial court failed to consider the mitigating factors of youth as set forth in *Miller*. According to defendant, the protections of *Miller* applied to 19-year-old offenders such as himself and resentencing was warranted under *People v. Buffer*, 2019 IL 122327. He finally alleged that any potential forfeiture, waiver, or procedural default "stem[med]" from ineffective assistance of trial, posttrial, and appellate counsel.

¶ 26   Defendant attached, relevant here, a Chicago Police Department arrest report, which stated that defendant was arrested for murder pursuant to "CPD INVESTIGATIVE ALERT" # 299987663. The report further stated that defendant was identified as the offender in a homicide that occurred in the 2000 block of West Arthur on July 17, 2015.

¶ 27   On June 12, 2023, the circuit court summarily dismissed the petition as frivolous and patently without merit in a written order finding, *inter alia*, that a warrantless arrest supported by probable cause did not violate the Illinois Constitution and probable cause existed in this case. Further, defendant was not denied effective assistance based upon trial counsel's failure to file a

motion to quash arrest and suppress evidence because there was probable cause to arrest defendant and such a motion would most likely not have been granted. The court also found that defendant's 55-year sentence for first degree murder did not shock the moral sense of the community considering the nature of the offense. Moreover, *Miller* and its progeny were inapplicable because defendant was 19 years old at the time of the offense. Defendant filed a motion to reconsider, which the court denied.

¶ 28 On appeal, defendant contends that the circuit court erred in summarily dismissing the *pro se* petition when it raised arguably meritorious issues as to his arrest and sentence.

¶ 29 The Act provides a three-stage procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. *People v. Williams*, 2024 IL 127304, ¶¶ 14-15. "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, issues that could have been raised on direct appeal, but were not, are forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-44 (2005).

¶ 30 The circuit court dismissed defendant's petition at the first stage of proceedings.

¶ 31 At the first stage, a defendant files a petition, which the circuit court independently reviews and, taking the allegations as true, determines whether it is frivolous or is patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9. A petition should be summarily dismissed as frivolous or patently without merit only when it has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable basis in fact or law when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id*. at 16. Fanciful factual

allegations are those which are "fantastic or delusional," and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id*. at 16-17. We review the summary dismissal of a postconviction petition *de novo*. *Id*. at 9.

¶ 32    Defendant first contends, relying on *People v. Smith*, 2022 IL App (1st) 190691, *overruled by People v. Clark*, 2024 IL 127838, that the *pro se* postconviction petition raised the arguably meritorious claim that his arrest pursuant to an investigative alert was unconstitutional. He further contends that he was denied effective assistance when trial and appellate counsel failed to rely on *Smith* to argue that his DNA should have been suppressed because it was obtained pursuant to an unconstitutional arrest.

¶ 33    Since the parties completed briefing in this case, our supreme court issued *Clark*, overruling *Smith* and holding that arrests pursuant to investigative alerts do not violate the Illinois Constitution. *Clark*, 2024 IL 127838, ¶ 63. In light of *Clark*, defendant's contention fails.

¶ 34    Defendant next contends that his petition, "liberally construed," stated an arguable claim that his 55-year sentence was unconstitutionally excessive under the proportionate penalties clause of the Illinois Constitution when the sentencing court did not consider the *Miller* factors.

¶ 35    Initially, the State contends that this argument, based upon defendant's sentencing hearing, could have been raised on direct appeal and is therefore forfeited. See, *e.g*., *People v. Davis*, 2014 IL 115595, ¶ 13 (the Act allows inquiry into constitutional issues arising from the original conviction that were not raised and could not have been adjudicated on direct appeal; issues that could have been raised, but were not, are forfeited).

¶ 36    Defendant attempts to overcome this forfeiture by challenging appellate counsel's failure to challenge posttrial counsel's failure to raise the *Miller* factors at sentencing.

¶ 37    To determine whether trial counsel was ineffective, we follow the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17. At the first stage of postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id*.

¶ 38    Both prongs must be satisfied for a finding of ineffectiveness. *People v. Veach*, 2017 IL 120649, ¶ 30. Ineffective assistance of counsel claims are generally reviewed *de novo*. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 91.

¶ 39    "The *Strickland* standard applies equally to claims of ineffective appellate counsel, and a defendant raising such a claim must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). Appellate counsel is not obligated to argue every conceivable issue on appeal, and a defendant cannot claim prejudice based on appellate counsel's failure to raise a non-meritorious issue. *People v. Pingelton*, 2022 IL 127680, ¶ 64. If the underlying claim would not have succeeded, "then 'there is no arguable legal basis' " for a defendant's claim that he was denied effective assistance of counsel on direct appeal. *People v. Randall*, 2021 IL App (1st) 191194, ¶ 66 (quoting *Petrenko*, 237 Ill. 2d at 501-02).

¶ 40    The proportionate penalties clause of the Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the defendant to useful citizenship." Ill. Const. 1970, art. I, § 11. Our supreme court has held that the "limitation on penalties" in this clause goes "beyond the framers' understanding of

the eighth amendment and is not synonymous with that provision." *People v. Clemons*, 2012 IL 107821, ¶ 40.

¶ 41 In *Miller*, the United States Supreme Court held that the prohibition on cruel and unusual punishment in the eighth amendment of the United States Constitution forbade mandatory life sentences without the possibility of parole for "those under the age of 18 at the time of their crimes." *Miller*, 567 U.S. at 465, 479. Our supreme court subsequently concluded that *Miller* applied to *de facto* life sentences. *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10. Thereafter, in *Buffer*, 2019 IL 122327, ¶ 41, our supreme court defined a *de facto* life sentence for a juvenile as a sentence of more than 40 years' imprisonment.

¶ 42 The State contends that *Miller* does not apply to defendant because he was 19 years old at the time of the offense and that this claim is not cognizable in a postconviction petition because it is a nonconstitutional claim of sentencing error. The State notes that defendant's claim that the trial court failed to consider his youth is meritless in light of the record, which reflects that defendant's youth, lack of family support, gunshot injury, and loss of a friend to firearm violence were discussed at the sentencing hearing.

¶ 43 Our supreme court "has not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development." *People v. Clark*, 2023 IL 127273, ¶ 87; see also *People v. Thompson*, 2015 IL 118151, ¶¶ 7, 43-44 (19-year-old defendant sentenced to natural life in prison); *People v. Harris*, 2018 IL 121932, ¶¶ 1, 48 (defendant, aged 18 years and 3 months, sentenced to 76 years in prison). However, "those cases addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences

in *initial* postconviction petitions," which is not the situation in the case at bar. (Emphases in original.) *Clark*, 2023 IL 127273, ¶ 88.

¶ 44   Here, defendant's claim fails because he did not receive a mandatory natural or *de facto* life prison sentence. *Id.* ¶¶ 72-73; *People v. Hilliard*, 2023 IL 128186, ¶ 27. Because defendant was between 18 and 21 years old at of time of the offense, he will be eligible for parole review by the Prison Review Board after serving 20 years or more of his sentence.

¶ 45   Pursuant to section 5-4.5-115(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-115(b) (West 2022)), a person under 21 years of age at the time of the commission of first degree murder who was sentenced on or after June 1, 2019, shall be eligible for parole review after serving 20 years or more of his or her sentence, excluding those subject to a sentence of natural life.

¶ 46   Here, defendant's sentencing hearing occurred on June 17, 2019, after the effective date of this provision on June 1, 2019. Accordingly, defendant would be eligible for parole review after serving 20 years or more of his sentence. As we previously explained:

> "The Code also makes an important distinction between juvenile defendants and young adult defendants on the issue of sentencing. While the sentencing court must consider additional mitigating factors in determining the appropriate sentence for a juvenile defendant, incorporating *Miller* (see 730 ILCS 5/5-4.5-105(a) (West 2016)), there is no corresponding requirement for sentencing young adult defendants under 21 years of age, even to a term of life in prison with no possibility of parole. Section 5-4.5-115 recognizes that young adults under the age of 21 may be less morally culpable than a fully mature adult, thus entitling them to parole review after serving 20 years of a lengthy sentence.

However, nothing in the Code equates young adult defendants with juveniles when it comes to sentencing them on their convictions." *People v. Gomez*, 2020 IL App (1st) 173016, ¶ 33.

¶ 47 Therefore, defendant cannot establish that his 55-year sentence violated the Illinois Proportionate Penalties Clause where, as a 19-year-old at the time that he committed this offense, he is eligible for parole review after serving 20 years or more of his sentence. 730 ILCS 5/5-4.5-115(b) (West 2022). Accordingly, because defendant has a meaningful opportunity to obtain release before serving more than 40 years' imprisonment, he did not receive a *de facto* life sentence. See *People v. Kendrick*, 2023 IL App (3d) 200127, ¶ 42 (quoting *People v. Elliot*, 2022 IL App (1st) 192294, ¶ 56 ("When section 5-4.5-115(b) *** applies, the defendant's sentence is 'not a *de facto* life sentence since [the defendant] is eligible for parole.' ")). Consequently, defendant cannot establish that his sentence violated the proportionate penalties clause. *Clark*, 2023 IL 127273, ¶¶ 72-73; *Hilliard*, 2023 IL 128186, ¶ 27.

¶ 48 As defendant's sentencing claim has no merit, he cannot establish that he was arguably denied effective assistance of counsel on direct appeal when counsel did not raise posttrial counsel's failure to argue the *Miller* factors at sentencing. See *Pingelton*, 2022 IL 127680, ¶ 64 ("a defendant cannot claim prejudice based on appellate counsel's failure to raise an issue that is not meritorious").

¶ 49 Accordingly, the circuit court properly summarily dismissed the *pro se* postconviction petition when it failed to raise arguably meritorious issues. See *Hodges*, 234 Ill. 2d at 17.

¶ 50 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 51 Affirmed.